**OPELIKA NURSING HOME, INC., et al., Plaintiffs-Appellants,**

v.

**Elliott L. RICHARDSON, Secretary of the United States Department of Health, Education and Welfare, et al., Defendants-Appellees.**

**No. 71–1296.**

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1971.

Alvin T. Prestwood, Montgomery, Ala., for plaintiffs-appellants; Volz, Capouano, Wampold & Prestwood, Montgomery, Ala., of counsel.

Michael Goldman, Dept. of Justice, Washington, D. C., Ira DeMent, U. S. Atty., William J. Baxley, Atty. Gen. of Ala., Montgomery, Ala., John N. Mitchell, Atty. Gen. of U. S., Judith S. Seplowitz, Atty., Dept. of Justice, Washington, D. C., Herman H. Hamilton, Jr., Sp. Asst. Atty. Gen., Montgomery, Ala., John M. Broeker, Minneapolis, Minn., Alan S. Rosenthal, Alexander P. Humphrey, Dept. of Justice, Civil Div., Appellant Section, L. Patrick Gray, III, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for defendants-appellees; Capell, Howard, Knabe & Cobbs, P. A., Montgomery, Ala., of counsel.

Before COLEMAN, GOLDBERG, and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

In this case the trial court, on the basis of the barebone pleadings, denied plaintiffs access to a federal forum, 323 F.Supp. 1206. Recognizing that jurisdictional facts are the very marrow of federal litigation, we remand for a fleshing out of the bones.

I.

By means of Title XIX of the Social Security Act of 1965, 42 U.S.C.A. § 1396 et. seq., Congress established a federal program to provide medical assistance to individuals whose economic resources are insufficient to meet the cost of necessary medical services. Denominated "Medicaid," this program is funded by the Secretary of Health, Education, and Welfare [hereinafter referred to as Secretary], but is administered by participating states. Essentially, federal matching funds, used to finance a state medical-assistance plan which comports with certain federal statutory requirements,[1] are disbursed to the state by the Secretary. The state, in turn, channels the money through an appropriate state agency to various providers of medical services, including skilled nursing homes. The amount of such payments is largely within the discretion of the state, subject only to the limitation that a state plan must not make provision for reimbursement to facilities furnishing medical services in excess of "reasonable charges consistent with efficiency, economy, and quality of care." 42 U.S.C.A. § 1396a(30). By virtue of 42 U.S.C.A. § 1302, the Secretary has the authority to "make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter." In exercising this authority in conjunction with the "reasonable charges" limitation, the Secretary pro-

---

1. See 42 U.S.C.A. § 1396a.

mulgated a regulation, effective July 1, 1970, providing that payments made by a state agency to skilled nursing homes could not exceed the "reasonable cost," as that term is defined by additional regulations, of the medical services rendered by such facilities.[2]

While the Medicaid program is funded primarily with federal and state monies, providers of medical services, including skilled nursing homes, are not precluded by statute from receiving payments from sources other than the appropriate state agency. On the contrary, Title XIX of the Act seemingly permits the receipt of supplementary payments from a patient, his family, or his friends. *See* U.S.C.A. § 1396a(17). However, the Secretary, asserting control over supplementation payments by virtue of 42 U.S.C.A. § 1396a(14), promulgated a regulation requiring those states with existing supplementation programs for skilled nursing homes to submit to the secretary, prior to January 1, 1971, a plan for phasing out such programs. *See* 45 C.F.R. 249.31.

On January 1, 1970, the State of Alabama began its participation in the Medicaid program with the implementation of an approved plan. Shortly thereafter, plaintiffs, as owners and operators of skilled nursing homes in the State of Alabama, initiated their participation in Alabama's medical assistance program. On July 1, 1970, the Secretary's "reasonable cost" regulation became effective, and the defendant Ira L. Meyers, as administrator of Alabama's Medicaid program, notified plaintiffs that any Medicaid payments received from any source which were in excess of the "reasonable cost" standard had to be reimbursed to the agency or person making such payments. Furthermore, the Secretary, pursuant to his "supplementation" regulation, directed the defendant Meyers to begin planning a program to phase out the plaintiffs' right to collect supplementation payments from sponsors or relatives of Medicaid patients.[3]

As a result of these actions, plaintiffs instituted suit in federal district court, seeking, on behalf of themselves and all others similarly situated, declaratory relief and an injunction restraining the Secretary and defendant Meyers, and their agents and representatives, from enforcing the foregoing regulations. Specifically, plaintiffs asserted (1) that the Secretary's "reasonable cost" regulation contravenes the express statutory limitation of "reasonable charges consistent with efficiency, economy, and quality of care," and (2) that the Secretary is without statutory authority to

---

2. Specifically, 45 C.F.R. § 250.30(b) (3) (ii) provides that payments made by a state agency to skilled nursing homes under a Medicaid program cannot exceed the payments made directly by the Secretary to these same facilities for services rendered to beneficiaries of Medicare. The Medicare program, as distinct from Medicaid, is both funded and administered by the federal government, and those skilled nursing homes which participate in Medicare are entitled to the "reasonable cost" of their services under 42 U.S.C.A. § 1395f(b). "Reasonable cost" is computed in accordance with a formula set out in 42 U.S.C.A. § 1395x(v) (1) and the regulations thereunder, which provisions require, *inter alia,* that allowance be made for a reasonable return on debt and equity capital.

3. The Secretary's "reasonable cost" regulation, as applied to the plaintiffs by the defendant Meyers, may not, in and of itself, preclude the receipt of supplementation payments by skilled nursing homes in Alabama. As noted above, the Secretary's "reasonable cost" regulation is a *maximum* limitation on the amount that can be paid under a state plan by a state agency to skilled nursing homes for services rendered to Medicaid patients. If, under Alabama's Medicaid plan, state agency payments are less than the "reasonable cost" standard, then that regulation alone, as interpreted by defendant Meyers, would not prohibit the plaintiffs' receiving supplementary payments. On the other hand, if such payments equal that standard, then the "reasonable cost" regulation itself would apparently forbid supplementation since it has been applied by Meyers to payments received from "any source."

phase out Alabama's supplementation program. In response to the complaint, the defendant Meyers moved to dismiss the action on the ground that the plaintiffs failed to state a claim upon which relief could be granted. Similarly, the Secretary moved to dismiss pursuant to Rule 12(b) (6) of the Fed.R.Civ.P., and, in addition, asserted that the trial court lacked jurisdiction over both the subject matter of the action and the person of the Secretary.

In their complaint plaintiffs posited subject matter jurisdiction under 28 U.S.C.A. § 1331(a).[4] To this end the complaint contained a formal allegation that the matter in controversy exceeded, exclusive of interest and costs, the sum of $10,000. However, plaintiffs failed to allege any jurisdictional facts tending to support this formal allegation. Indeed, plaintiffs admitted in their complaint that skilled nursing homes in Alabama might suffer no pecuniary loss by virtue of the "reasonable cost" regulation, for the complaint stated that "reasonable cost" might be "higher or lower" than "reasonable charges." On the basis of this admission, the trial judge concluded that any pecuniary loss which the plaintiffs might incur as a result of the enforcement of the "reasonable cost" regulation was "too speculative" to satisfy the "matter in controversy" requirement of 28 U.S.C.A. § 1331(a).[5] Therefore, the court below concluded, solely upon the basis of the pleadings, that it did not have jurisdiction over the subject matter of the action. However, in addition to, and notwithstanding this holding of a lack of subject matter jurisdiction, the trial court held that the plaintiffs' complaint failed to state a claim upon which relief could be granted.

As a result of these adverse rulings, plaintiffs appeal, contending, *inter alia*, that the district court erred in denying them an opportunity to discharge their burden of proving that the claim satisfied the requisite jurisdictional amount. We agree with this contention, for we are convinced that the pleadings alone are not so conclusive that the plaintiffs should have been denied an opportunity to present facts in support of their jurisdictional claim.[6] Accordingly, we remand for full development of the jurisdictional facts.

## II.

The jurisdiction of a federal district court in a civil action involving a federal question under 28 U.S.C.A. § 1331 is statutorily limited to situations in which the matter in controversy exceeds $10,-000. Under Fed.R.Civ.P. 12(h) (3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action," a district court is charged with the duty of enforcing

4. 28 U.S.C.A. § 1331(a) provides: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

5. With respect to the "supplementation" regulation, the trial judge also held that any losses claimed by the plaintiff were "too speculative," since the plaintiffs' complaint, filed in September of 1970, challenged a regulation which did not become effective until January 1, 1971.

6. Plaintiffs also asserted that the trial court had subject matter jurisdiction of the action under 28 U.S.C.A. § 1343, which gives a federal district court original jurisdiction, without regard to any amount in controversy, of any civil action seeking redress for deprivation under color of state law of a right secured by the Constitution or a federal statute. In addition, plaintiffs contended that, for purposes of satisfying the requisite jurisdictional amount under 28 U.S.C.A. § 1331, aggregation of their claims was proper. The district court held against the plaintiffs on both contentions, and on appeal the skilled nursing homes also press for reversal of these rulings. However, we decline the invitation to pass upon either of these matters, believing that any ruling by us at this time would be premature. On remand, if plaintiffs are able to support their jurisdictional claim under 28 U.S.C.A. § 1331, consideration of their alternative bases of jurisdiction would be rendered unnecessary.

this jurisdictional limitation. Therefore, it becomes necessary in some cases for a federal district court to enter upon a determination as to whether its jurisdiction has been properly invoked.

In order to prevent any such preliminary jurisdictional determination from unfairly depriving a party of a trial on the merits, the Supreme Court has formulated a fairly rigorous standard governing dismissal for want of jurisdiction. In St. Paul Mercury Indemnity Co. v. Red Cab Co., 1938, 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845, the Court enunciated that standard in the following words:

> "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." [footnotes omitted]

Whether expressed in terms of "good faith" or "legal certainty,"[7] the standard clearly favors those parties seeking to invoke the jurisdiction of a federal district court.

■ Turning our attention to the instant case, we first note that the court below was correct in concluding that the matter in controversy in this action was the plaintiffs' right to be free of the challenged regulations, and that "[t]he value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed." McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 181, 56 S.Ct. 780, 781, 80 L.Ed. 1135; accord, KVOS, Inc. v. Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Bishop Clarkson Memorial Hospital v. Reserve Life Insurance Co., 8 Cir. 1965, 350 F.2d 1006; Yoder v. Assiniboine and Sioux Tribes, etc., 9 Cir. 1964, 339 F.2d 360. However, we conclude that in measuring the plaintiffs' loss the district court applied a homemade formulation, couched in terms of a claim "too speculative" to satisfy the jurisdictional requirement, which contravened the spirit of the "legal certainty" standard. The speculativeness of the jurisdictional claim in this case does not warrant dismissal, for the fact that plaintiffs admitted that they may or may not suffer losses as a result of the enforcement of the "reasonable cost" regulation does not show to a legal certainty that plaintiffs' claim is really for less than the jurisdictional amount. While such an admission may have evidential value as tending to show an absence of good faith on the part of the plaintiffs, it is by no means conclusive, for the very fact that plaintiffs stated that they *may* suffer losses negates the existence of any "legal certainty." Therefore, we conclude that the district court applied an improper standard in assessing the plaintiffs' jurisdictional claim, and that had the trial court applied the correct criterion, dismissal would not have been warranted.

■ While we hold that it was error for the district court to dismiss for

---

7. It is clear that the Supreme Court in *Red Cab* did not intend to establish two distinct standards concerning dismissal for want of subject matter jurisdiction, for subsequent decisions reveal that "good faith" and "legal certainty" are equivalents. See Horton v. Liberty Mutual Ins. Co., 1961, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890; Jones v. Landry, 5 Cir. 1967, 387 F.2d 102, 104.

want of jurisdiction solely upon the basis of the pleadings, it does not necessarily follow that that court should have assumed jurisdiction of this case. This is because the substantive test which should have been applied by the district court is not the only factor to be considered in making a jurisdictional determination. In addition to employing the "legal certainty" standard in assessing a jurisdictional claim, a district court is bound to follow procedural guidelines which have been engrafted by Supreme Court decisions upon the substantive rule. The resulting union possesses a complexity that is reminiscent of the intricacies of traditional common law pleading. But after threading our way through the entanglements, we conclude that this case must be remanded so that the trial court can make further inquiry into its own jurisdiction.

### III.

■ The complexity surrounding the various procedural and substantive rules which a district court must follow in assessing its own jurisdiction is partially a product of two contradictory goals which those guidelines strive to achieve. First, the amount in controversy cannot be made to depend on the amount that a plaintiff may ultimately recover. To do so would either pinion jurisdiction on an estimate by the trial court as to the final outcome, require a preliminary jurisdictional trial which would duplicate the trial on the merits, or result in a wasteful dismissal for want of jurisdiction because the ultimate recovery on the merits fell short of the jurisdictional amount. C. Wright, Law of Federal Courts, 111 (2d ed. 1970). Thus, these considerations favor adoption of the "legal certainty" test, which is heavily weighted in favor of those parties invoking the aid of the federal courts. On the other hand, the amount in controversy cannot be made to depend solely upon a formal allegation that the case involves the requisite jurisdictional amount. Such a practice would result in effective nullification of a statutory

requirement, and would permit a party to manufacture jurisdiction by means of a wholly frivolous and colorable claim. *Id.* Therefore, this countervailing consideration supports the imposition of some burden upon a plaintiff to show the propriety of his presence in a federal district court.

With respect to a plaintiff's burden of proof concerning the jurisdictional amount, the Supreme Court first had occasion to consider the problem in McNutt v. General Motors Acceptance Corp., *supra.* In that case the Court established the following general guidelines:

"The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where

they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. * * "

298 U.S. at 189, 56 S.Ct. at 785.

While the Court in *McNutt* clearly stated that a plaintiff must bear the burden of showing that he is properly before a federal forum, the above language is unclear as to whether a plaintiff's uncontradicted, formal allegation of jurisdiction discharges that burden and as to when a district court *must* initiate further inquiry. Less than one year after the *McNutt* decision the Supreme Court undertook a clarification.

In KVOS, Inc. v. Associated Press, *supra,* the Associated Press brought suit to enjoin the pirating by the defendant radio station of news gathered by the plaintiff's members. The complaint contained a formal allegation that the matter in controversy exceeded the requisite jurisdictional amount. The defendant moved to dismiss the suit for lack of jurisdiction, alleging facts tending to show that the damage to which plaintiff was being subjected as a result of the alleged pirating fell short of the jurisdictional amount. In speaking to the jurisdictional issue, the Supreme Court remarked:

"The bill seeks redress for damage to the respondent's business and for damage to the business of some or all of its members. The right for which the suit seeks protection is, therefore, the right to conduct those enterprises free of the alleged unlawful interference by the petitioner. No facts are pleaded which tend to show the value of that right. The complaint contains nothing to the purpose save the general statement that the damage to which the respondent is being subjected is in excess of three thousand dollars and the amount involved is in excess of that sum. Such a formal allegation is sufficient, unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint, in which case the suit should be dismissed by the court sua sponte or upon the defendant's motion. In this case the formal allegation is not reenforced or strengthened by other portions of the complaint; neither is it neutralized or weakened by qualifying or detracting allegations. In effect it stands alone. Therefore the court would not have been bound to dismiss upon a motion based solely on alleged insufficient pleading of the amount in controversy; though it might, of its own motion, have entered upon an inquiry to ascertain whether the cause was one over which it had jurisdiction. But where the allegations as to the amount in controversy are challenged by the defendant in an appropriate manner, the plaintiff must support them by competent proof. The petitioner's motion was an appropriate method of challenging the jurisdictional allegations of the complaint. It did not operate merely as a demurrer, for it did not assume the truth of the bill's averments and assert that in spite of their truth the complaint failed to state a case within the court's jurisdiction. On the contrary the motion traversed the truth of the allegations as to amount in controversy and in support of the denial recited facts dehors the complaint. This could have been done by answer but the time for answer had not arrived when the rule to show cause was issued and petitioner was faced with the possibility of an injunction. The motion required the trial court to inquire as to its jurisdiction before considering the merits of the prayer for preliminary injunction. And in such inquiry complainant had the burden of proof * * * "

299 U.S. at 277–278, 57 S.Ct. at 200–201 (footnotes omitted).

 This language shows that a plaintiff discharges his burden with an

unchallenged, formal allegation of jurisdictional amount. Indeed, the Court in *KVOS* stated that the burden is discharged by means of a formal allegation even though the defendant makes an unsupported assertion of lack of subject matter jurisdiction. Of course, in both instances the trial court may, *sua sponte*, require proof as to its jurisdiction. But in neither case is a district court *required* to do so. Rather, it may conclude from the pleadings that it does have jurisdiction and proceed to a disposition of the merits of the case. Where a defendant, however, challenges the amount in controversy in an appropriate manner, *KVOS* requires a district court to initiate further inquiry into the propriety of exercising jurisdiction, and, upon such inquiry, the plaintiff retains his burden of proof. In *KVOS* the Court held that the defendant's pleading of jurisdictional facts traversing the truth of the formal jurisdictional allegation was a proper mode of attack. In the instant case we also conclude that the jurisdiction of the trial court was appropriately challenged.

■ The defendant Secretary in his motion to dismiss simply alleged that the trial court lacked subject matter jurisdiction. This allegation, in the words of the Court in *KVOS*, "assume[d] the truth of the bill's averments and assert-[ed] that in spite of their truth the complaint failed to state a case within the court's jurisdiction." Thus, the court below was not required, solely upon the basis of the plaintiffs' jurisdictional

allegation and the defendant Secretary's motion to dismiss, to inquire further as to its jurisdiction. The defendant Secretary's motion, however, also assumed the truth of plaintiffs' allegation that the enforcement of the "reasonable cost" regulation may or may not cause the skilled nursing homes to suffer losses. This admission weakened the formal jurisdictional allegation contained in the complaint. While, as noted above, the admission did not show to a legal certainty that the plaintiffs' claim was really for less than the jurisdictional amount so as to justify dismissal of the suit on the pleadings, we think it detracted from the plaintiffs' jurisdictional claim to an extent sufficient to destroy the prima facie nature of that allegation. Therefore, we hold that the plaintiffs' admission rendered the Secretary's motion to dismiss an "appropriate challenge" to the alleged jurisdictional amount.[8]

■ Since we conclude that the defendant Secretary challenged the jurisdiction of the district court in an appropriate manner, the *KVOS* decision dictates that that court was charged with the duty of making further inquiry as to its own jurisdiction. It is clear from the record in this case that the trial court failed in that duty. Therefore, we must remand this case in order that the trial court may perform its jurisdictional responsibility. To that end we direct the trial court to accord the plaintiffs an opportunity to discharge their burden of showing that the matter in

8. As noted in footnote 5 *supra*, the district court also applied a "too speculative" standard to the plaintiffs' claim under the "supplementation" regulation. It follows, of course, from our textual discussion of the "reasonable cost" regulation that the trial court also erred in failing to employ the "legal certainty" standard in assessing the sufficiency of the plaintiffs' jurisdictional claim with respect to the "supplementation" regulation. Furthermore, evaluation of this claim under the "legal certainty" test would not justify dismissal for want of jurisdiction. Therefore, because the plaintiffs' admission related only to the "reasonable cost" regulation, it might be concluded that their formal jurisdictional allegation remains prima facie sufficient under the "supplementation" regulation. However, on the basis of the record before us we cannot be certain that the admission does not detract from any jurisdictional claim arising out of the alleged invalidity of the "supplementation" regulation. The relationship between the two regulations may operate to weaken the formal jurisdictional allegation in relation to any claim arising under the "supplementation" regulation. *See* footnote 3 *supra*. We leave the resolution of this problem to the district court on remand.

controversy satisfies the requisite jurisdictional amount. *See* Arnold v. Troccoli, 2 Cir. 1965, 344 F.2d 842; Harmon v. Superior Court, 9 Cir. 1962, 307 F.2d 796; Topping v. Fry, 7 Cir. 1945, 147 F.2d 715.

Upon remand, the burden which the plaintiffs must discharge is to show by a preponderance of the evidence that it does not appear to a legal certainty that their claim is really for less than the jurisdictional amount. *See* Jones v. Landry, 5 Cir. 1967, 387 F.2d 102, 104; *compare* Horton v. Liberty Mutual Insurance Co., 1961, 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890, *with* KVOS, Inc. v. Associated Press, *supra,* and McNutt v. General Motors Acceptance Corp., *supra.* Since there is "no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Gibbs v. Buck, 1938, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111. Thus, the trial court on remand may call for proof of jurisdictional facts by means of oral testimony, Williams v. Minnesota Mining & Manufacturing Co., S.D.Cal. 1953, 14 F.R.D. 1; affidavits, KVOS, Inc. v. Associated Press, *supra;* Mechanical Appliance Co. v. Castleman, 1910, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272; or depositions, Wade v. Rogala, 3 Cir. 1959, 270 F.2d 280. We must caution the district court, however, that its jurisdictional determination must be conducted in such a manner as to enable an appellate court to ascertain whether the evidence supports the ultimate finding. Jaconski v. Avisun Corp., 3 Cir. 1966, 359 F.2d 931, 935. Other than this requirement, the blueprint of the method of determining the length and breadth of the amount in controversy is entirely within the discretion of the trial court, and we impose upon that court no particular *modus operandi.* We merely insist that the plaintiffs in this suit be given an opportunity by some means to discharge their burden and to support their jurisdictional claim.

## IV.

In addition to complaining of the jurisdictional dismissal, plaintiffs on appeal seek appellate review of the trial court's disposition on the merits. In the absence of jurisdictional certainty, however, we decline to consider the dismissal for failure to state a claim upon which relief can be granted. *See* Swanson v. United States, 9 Cir. 1955, 224 F.2d 795, 15 Alaska 608. In the federal tandem jurisdiction takes precedence over the merits. Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication.

The contrapuntal decree entered by the court below dismissed the plaintiffs' suit (1) for want of subject matter jurisdiction, and (2) because the complaint failed to state a claim upon which relief could be granted. This decree simply cannot stand, for it has a fatal inconsistency. *See* Brown v. Strickler, 6 Cir. 1970, 422 F.2d 1000. "The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief * * *. Whether the complaint states [such] a cause of action * * *must be decided after and not before the court has assumed jurisdiction over the controversy."* Bell v. Hood, 1946, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L. Ed. 939 [emphasis added]. Federal jurisdiction is not so ambidextrous as to permit a district court to dismiss a suit for want of jurisdiction with one hand and to decide the merits with the other. A federal district court concluding lack of jurisdiction should apply its brakes, cease and desist the proceedings, and shun advisory opinions. To do otherwise would be in defiance of its jurisdictional fealty. Therefore, viewing *Bell's* a priori requirement of finding jurisdiction before rendering a final decree on the merits as one of the high commands of our jurisprudential system, we conclude that the court below, once it held that it had no jurisdiction,

should have immediately dismissed the action. *See* Brown & Root, Inc. v. Big Rock Corp., 5 Cir. 1967, 383 F.2d 662; Roberson v. Harris, 8 Cir. 1968, 393 F.2d 123; O'Hair v. United States, D.C. D.C.1968, 281 F.Supp. 815; Grise v. Combs, E.D.Ky.1960, 183 F.Supp. 705. Any order in contravention of this course of action was improper. *See* E. K. Carey Drilling Co. v. Murphy, D.Colo., 1953, 113 F.Supp. 226.

For the foregoing reasons the judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.