UNI–WORTH ENTERPRISES, INC.,
d/b/a Uni-Worth Glass Company,
Inc., Plaintiff,

v.

The CITY OF CLEVELAND, MISSISSIP-
PI, et al., Defendants.

No. DC 75–69–S.

United States District Court,
N. D. Mississippi,
Delta Division.

Jan. 5, 1976.

Roy D. Campbell, Jr., Roy D. Campbell, III, Campbell & DeLong, Greenville, Miss., Warner R. Wilson, Jr., Earl B. Benson, Jr., Skinner, Wilson, Beals & Strickland, Atlanta, Ga., for plaintiffs.

Alfred A. Levingston, Jeffrey A. Levingston, Levingston, Jacks & Levingston and

John W. Valentine, City Atty., Cleveland, Miss., for defendants.

## RULING ON MOTION TO DISMISS

ORMA R. SMITH, District Judge.

The Court having heard the able arguments of counsel, this cause is now in a posture for disposition of defendants' motion to dismiss for lack of jurisdictional amount. The plaintiff asserts that the Court has jurisdiction of the action under two sections of the United States Code. Section 1331(a) of Title 28 reads as follows: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or the value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." On the jurisdictional question, the plaintiff also relies on the regular diversity citizenship section set forth as follows at 28 U.S.C. Section 1332(a)(1): "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between— (1) citizens of different States."

■ Defendants at this point challenge only plaintiff's assertion that the value of the matter in controversy in this case exceeds the sum of $10,000, exclusive of interest and costs within the meaning of the law. When a defendant so places in issue the question of the presence of the jurisdictional amount, the burden then falls to plaintiff to satisfy the court that the requisite amount is in controversy. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1935). For reasons which will be discussed later, the Court has determined that the plaintiff has discharged its burden in this regard.

In passing upon the instant question, the Court is guided by the following language in *St. Paul Mercury Indemnity Company v. Red Cab Company*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845, 848 (1938):

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

■ Particularizing somewhat the analysis of the proper disposition of the instant motion, it is apparently the rule that in a case seeking injunctive relief and involving the operation of a business activity, the amount in controversy is the difference between the value of a business absent the regulation challenged and its value under regulation. Professor Wright phrases it as follows:

"Where a business is threatened, either by a regulatory statute or by unfair competition, the stated rule is that the amount in controversy is the difference between the value of the business unregulated, or not subject to the competition, and its value under the regulation, or with the competition. In making this determination, merely possible future harm is not to be considered, but probable consequences will be taken into account." *Wright, Federal Courts*, Section 33 (2nd Ed. 1970) at 115.

The Fifth Circuit has had at least one recent occasion to review the proper method of determining the presence of jurisdictional amount in cases such as this. In *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658 (5th Cir. 1971), the court tacitly adopted or restated the rule as phrased by Professor Wright and also observed that the test for determining the amount in controversy "clearly favors" the party maintaining that jurisdiction is proper. 448 F.2d at 663. See also *Jones v. Landry*, 387 F.2d 102 (5th Cir. 1967).

Turning now to the facts in the case at bar, basically plaintiff maintains that the challenged ordinance of the City of Cleveland will effectively destroy its business in that town. Defendants claim that the com-

pliance with the ordinance would merely require plaintiff to slightly alter its method of operation and would not force plaintiff out of Cleveland. The Court finds plaintiff's argument more persuasive than that of defendants..

█ Uni-Worth's method of operation and the service which it provides are unique. To alter its practices so as to comply with the ordinance in question would destroy the plaintiff's chief appeal to its customers. Plaintiff's mobile operation with its self-contained service trucks allows it to offer the public the greatest degree of convenience and flexibility in the replacement of damaged automobile windshields. In order to comply with defendants' ordinance, plaintiff would be forced to abandon its mobile operation and operate from a fixed base. This would destroy the very essence of Uni-Worth's operation and consequently foreclose plaintiff from doing business in Cleveland.

Defendants argue that, insomuch as plaintiff's total sales in Mississippi in 1974 amounted to only $5,624, even assuming gross sales constitute the measure of amount in controversy, jurisdiction is lacking. Plaintiff counters that it did not begin operations in Mississippi in earnest until 1975, and between April and October of 1975 did business in excess of $100,000 in the state.

Defendants further argue that the amount in controversy here must be derived solely from plaintiff's business in Cleveland, disregarding plaintiff's receipts from business transacted elsewhere in the state. Plaintiff counters that argument with affidavits, which the Court finds convincing, to the effect that restrictions on plaintiff's ability to operate in Cleveland will necessarily result in a measurable reduction in the volume of Uni-Worth's business elsewhere. This is because much of the plaintiff's business is acquired through referrals from insurance claims agents and adjusters. Uncertainty in the minds of these individuals as to which cities plaintiff is permitted to operate in would undoubtedly dampen their inclination to recommend plaintiff's services to their clients.

Finally, defendants argue that plaintiff may make use of a temporary rental arrangement with service station operators in Cleveland whereby, for a fee of $2 per car, Uni-Worth employees could repair windshields on the service station premises and thereby bring themselves into compliance with the ordinance in question. The Court finds this argument widely misses the mark since it would still deprive plaintiff of its major selling point, the convenience of at-home replacement of automobile windshields.

In the last analysis, although there are no concrete facts before the Court which would tend to show that Uni-Worth's net profit from its Cleveland operations have in the past or will in the very near future exceed $10,000, it is clear that the Court cannot say, to a legal certainty as required by *St. Paul Mercury Indemnity*, that in the foreseeable future the profits from plaintiff's Cleveland operations will not exceed $10,000. In the face of what the Court considers the probable consequences of the restrictions imposed on plaintiff's business by the ordinance in question, the Court cannot but conclude that the jurisdictional amount is present in this case. Accordingly, defendants' motion to dismiss will be overruled.

## RULING ON INJUNCTION

As was stated in connection with the Court's ruling on the motion to dismiss, this business of the plaintiff in this case, Uni-Worth Enterprises, Incorporated, probably was born through the desire of its management to render a unique service to the residents of the southeastern portion of the United States by providing for the replacement of windshields, primarily in automobiles, through a method which made it convenient for the customer to obtain the services of this company.

The evidence in the case shows that at least ninety percent of the business done by the plaintiff originates from the personnel

of insurance companies who, under the terms of policies underwritten by them are required to replace broken windshields. Road and traffic conditions being what they are today, it is a common experience to have a rock from a passing vehicle break or nick the windshield of one's car. The idea promulgated by Uni-Worth is to make it as convenient as possible to a person with a damaged windshield to replace that windshield.

When an insurer receives a claim from an insured on a damaged windshield and undertakes to make arrangements for its replacement, the claims agent or adjuster can simply phone in an order to Uni-Worth's main office in Atlanta. Uni-Worth then telephones the insured car owner to find out when and where the replacement can be made, all at the convenience of the owner. The service people in the field are then notified when and where the work is to be done and they perform the service as provided for in the agreement with the owner of the automobile.

It may be that a housewife's automobile will have the windshield replaced during the morning when she is attending to her housework. It may be that a doctor would wish the windshield in his automobile replaced on his clinic lot at a certain time. Those are only two illustrations of the sort of service this company offers.

In the opinion of the Court, plaintiff's mode of operation is unique. It relieves the car owner of the responsibility or the chore of taking his automobile to a shop for repairs. Because of scheduling problems or other complications, a car owner may thus be deprived of his vehicle for a day or longer. Anyone who has ever owned an automobile is familiar with delays in regaining possession and use of a car undergoing any sort of repair at a garage.

It is the opinion of the Court that this convenience to the owners of the automobile is the major selling point of the service of this plaintiff. Without plaintiff's mobile operation, Uni-Worth would be just another company repairing automobiles.

There has been some mention of the fact that this company has the opportunity of using the premises of at least two service stations in the City of Cleveland whose managers have offered their lots for the use of the plaintiff at the rate of $2 per car. But this would not carry into effect the unique service which the plaintiff offers, and, in the opinion of the Court, such a procedure would be a great detriment to plaintiff in successfully operating its business.

Defendants seek to justify the ordinance here in question as a measure to prevent blight in residential areas caused when commercial car repair operations are undertaken in such areas. The Court fails to see how plaintiff's method of operation would create any sort of unsightliness or blight, even in the most staid residential areas. The evidence in the case clearly shows that no more than forty-five minutes is required to replace a windshield pursuant to plaintiff's method of operation. All work is done on the premises of the owner of the vehicle and it is the responsibility of plaintiff's service technician to ensure the area is cleaned of debris following the completion of the work. The Court cannot distinguish this sort of operation from the repairs periodically required by an air conditioner, household appliances, a television set, or other common mechanical devices found in or around almost every home in this country.

The Court has concluded that the instant ordinance is unconstitutional as it applies to Uni-Worth, because the regulation contravenes the Commerce Clause of the Constitution. Although there are some, wholly intrastate incidences in the course of plaintiff's operation, such as an accumulation of merchandise at a location within a city for a period of time before it is utilized, on the whole, plaintiff's business is intimately connected with interstate commerce. The order for a replacement job is directly transmitted to Atlanta where all arrangements for completion of the job are made. The replacement glass is shipped into the

state for installation. The proof in the case shows that much of the replacement work done by Uni-Worth is done by a service technician based in Memphis, Tennessee. The interstate aspects of plaintiff's operation are clearly sufficient to justify a holding that plaintiff is engaged in interstate commerce under the Commerce Clause.

The record before the Court does not disclose how this ordinance serves a legitimate public interest. The Court cannot but conclude that the ordinance is an attempt to damage or destroy plaintiff's business in Cleveland. In the opinion of the Court, the implementation of the ordinance was motivated by a desire to prevent competition, rather than to protect the health and well-being of the citizens of Cleveland. Accordingly, the Court must step in to prevent enforcement of the ordinance. *Dean Milk Co. v. Madison,* 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951); *Hood and Sons, Inc. v. DuMond,* 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949).

Although the ruling in this case is not based upon the Equal Protection Clause of the Fourteenth Amendment to the Constitution, it should be mentioned that, in the opinion of the Court, the ordinance in question also fails to comport with that portion of the Constitution.

There was some discussion between counsel as to the zoning ordinances of the City of Cleveland which may pertain to plaintiff's operation; however, all agree that no issue concerning Cleveland's zoning laws is now before the Court.

For the reasons previously stated, the Court has determined to grant plaintiff the injunction which it seeks, conditioned upon the filing with the Clerk of the Court of a bond in the sum of $5,000 to compensate the defendants in the event it is subsequently determined that the injunction should not have issued.

The Court feels that today's hearing amounts to a hearing on the merits; however, should the parties so desire, the Court will entertain a hearing on a final injunc-

tion in order to take additional pertinent evidence in the matter.

The defendants in the case apparently have the right to an appeal, pursuant to 28 U.S.C. Section 1292(a), of the Court's action today in granting the injunction. If they so choose, defendants may accordingly submit the matter to the Court of Appeals.