Alfred Edward EHM, Plaintiff-Appellee Cross-Appellant,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, Defendant-Appellant Cross-Appellee.

Alfred Edward EHM, Plaintiff-Appellant,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, Defendant-Appellee.

Nos. 83–1328, 83–1689.

United States Court of Appeals, Fifth Circuit.

May 29, 1984.

Alfred E. Ehm, pro se.

Christopher M. Klein, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, and RUBIN and POLITZ, Circuit Judges.

CLARK, Chief Judge:

Alfred E. Ehm, proceeding pro se, brought various claims under the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act, 5 U.S.C. § 552, against the National Railroad Passenger Corporation (Amtrak). These consolidated appeals present for review three orders in three different district court suits, two of which were consolidated below. We affirm the grant of summary judgment for Amtrak on the ground that Amtrak is not subject to the Privacy Act. We affirm the grant of summary judgment for Ehm requiring Amtrak to respond to Ehm's Freedom of Information Act requests notwithstanding Ehm's nonpayment of disputed fees. Finally, we vacate the district court's dismissal on the pleadings of Ehm's complaint seeking to require Amtrak to publish and make available to the public certain information allegedly in Amtrak's possession.

## I. Applicability of Privacy Act to Amtrak

Ehm instituted this action pursuant to the Privacy Act, 5 U.S.C. § 552a.[1] He alleged that Amtrak had intentionally created inaccurate and misleading documents about him, had ignored his requests to amend these inaccuracies, had disclosed records about him without his consent and to his detriment, had denied him access to its records about him, and had failed to publish in the Federal Register notice of the existence of its system of records, all in contravention of the Privacy Act. He sought declaratory, injunctive, and monetary relief against Amtrak.

Amtrak moved for summary judgment on the ground that it was not an "agency" of the federal government, within the meaning of the Privacy Act. Summary judgment was granted in favor of Amtrak. We affirm.

The Rail Passenger Service Act, 45 U.S.C. § 501 et seq., authorized the creation of Amtrak as a quasi-public, for-profit corporation chartered under the District of Columbia Business Corporation Act. The statute specifically provides that Amtrak "will not be an agency or establishment of the United States Government." 45 U.S.C. § 541.

When the Rail Passenger Service Act was enacted in 1970, the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act, 5 U.S.C. § 552, applied to federal "agencies" as defined in the Administrative Procedure Act, 5 U.S.C. § 551(1).[2] In 1972, Congress amended the Rail Passenger Service Act, adding section (g) of 45 U.S.C. § 546, to make Amtrak subject to the Freedom of Information Act.[3] A plausible inference is that Congress recognized that Amtrak was not an "agency" within the meaning of the Administrative Procedure Act. Section (g) of 45 U.S.C. § 546 does not mention the Privacy Act.

In 1974, the Freedom of Information Act was amended to expand the definition of "agency" contained in 5 U.S.C. § 551(1), as follows:

> For purposes of this section, the term "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, *Government controlled corporation*, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(e) (emphasis added). Because the Privacy Act defines "agency" by cross-reference to 5 U.S.C. § 552(e), *see* 5 U.S.C. § 552a(a)(1), the amended definition also applies to the Privacy Act.

The question before us is whether, as a matter of law, Amtrak is subject to the Privacy Act by virtue of this extended definition of "agency," despite the explicit provision in the Rail Passenger Service Act that Amtrak "will not be an agency or establishment of the United States Government," 45 U.S.C. § 541; or whether the inclusion of "Government controlled corporations" in the definition of "agency" under 5 U.S.C. § 552(e) can make Amtrak an

---

**1.** Ehm's amended complaint also stated common-law claims for fraud and deceit, and a claim for "monetary relief under the Fourth and Fifth Amendments, for invasion of personal liberty and property interests and for denial of procedural due process." These claims have been abandoned on appeal.

**2.** 5 U.S.C. § 551 defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency ...," except for Congress, the courts, and other specifically enumerated government departments and agencies not pertinent here.

**3.** Section (g) of 45 U.S.C. § 546 provides: "The Corporation shall be subject to the provisions of section 552 of Title 5."

The legislative history indicates the purpose of this amendment: "... in view of the substantial Federal funds which are going to Amtrak, the taxpaying public is entitled to access to information about the conduct of Amtrak affairs." S.Rep. No. 756, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2393, 2397–98.

"agency," as a matter of fact, for purposes of the Privacy Act.

### A.

■ The legal side of this issue can be resolved by applying fundamental principles of statutory construction. The provision of the Rail Passenger Service Act denying Amtrak "agency" status is specific to that Act. Thus, it controls over the general definitional provisions of the Privacy Act absent clear legislative intent to the contrary. *See Morton v. Mancari*, 417 U.S. 535, 551–52, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); *Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72 (1961). There is none. Furthermore, because enactment of this provision of the Rail Passenger Service Act preceded the extension of the "agency" definition in amended 5 U.S.C. § 552(e), the latter should not be read as controlling the former unless the two provisions exhibit

a 'positive repugnancy'.... This principle rests on a sound foundation. Presumably Congress had given serious thought to the earlier statute .... Before holding that the result of the earlier consideration has been repealed or qualified, it is reasonable for a court to insist on the legislature's using language showing that it has made a considered determination to that end.

*Blanchette v. Connecticut General Insurance Corp.*, 419 U.S. 102, 135, 95 S.Ct. 335, 354, 42 L.Ed.2d 320 (1974), *quoting In re Penn Central Transportation Co.*, 384 F.Supp. 895, 943 (Special Court 1974) (Friendly, J.). The provisions do not exhibit a positive repugnancy.

Legislative history does not aid in the resolution of this issue, because an overall analysis shows it to be inconclusive.

Both the Senate bill and the report accompanying the House bill extending the

definition of "agency" clearly contemplated that Amtrak would be made subject to the Privacy Act. Indeed, the Senate bill contained a definition of "agency" broader than the one ultimately adopted. It provided:

For purposes of this section, the term 'agency' means any agency defined in section 551(1) of this title, and in addition includes the United States Postal Service, the Postal Rate Commission, and any other authority of the Government of the United States which is a corporation and which receives any appropriated funds.

S. 2543, 93d Cong., 2d Sess. § 3(e), 120 Cong.Rec. 17,015 (1974). The legislative history would support the conclusion that this version was intended to have encompassed Amtrak.[4]

The "agency" definition contained in the House bill was identical to that now contained in 5 U.S.C. § 552(e). The report accompanying the original bill stated:

The term 'Government controlled corporation,' as used in this subsection, would include a corporation which is *not* owned by the Federal Government, such as the National Railroad Passenger Corporation (Amtrak) and the Corporation for Public Broadcasting (CPB).

H.R.Rep. No. 876, 93d Cong., 2d Sess. 7–8, *reprinted in* 1974 U.S.Code Cong. & Ad. News 6267, 6274 (emphasis in original).

This portion of the House Report sparked opposition on the House floor from Representatives Van Deerlin of California and Brown of Ohio, primarily over the first amendment implications of subjecting the Corporation for Public Broadcasting to government inquiry.[5]

Representative Moorhead of Pennsylvania, Chairman of the Subcommittee on Government Operations which reported the bill, responded with the observation that

---

**4.** Senator Kennedy observed during Senate debate: "The bill expands the definition of agency under the Freedom of Information Act to include the Postal Service, and Government corporations, such as the *National Railroad Passenger Corporation*." 120 Cong.Rec. 17,017 (1974) (emphasis added).

As we have observed, Amtrak was in fact already subject to the Freedom of Information Act by virtue of 45 U.S.C. § 546(g), enacted in 1972.

**5.** *See* 120 Cong.Rec. 6805, 6813 (1974).

"the language of the statute would control over the language of the report." 120 Cong.Rec. 6805 (1974).

The Conference Report reconsidered the definition of "agency," and, while leaving the language of the House bill definition intact, narrowed its interpretation of that language. Specifically, whereas the House Report had indicated that Government-controlled corporations "such as" Amtrak and the Corporation for Public Broadcasting were intended to be included in the definition, the conferees stated that they did not "intend to include corporations which receive appropriated funds but are neither chartered by the Federal Government nor controlled by it, such as the Corporation for Public Broadcasting." S.Con.Rep. No. 1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6285, 6293.

During debate on the floor, Representative Moorhead, Chairman of the House conferees, explained that this language

> clarifies the intent of Congress with respect to the impact of this legislation on the Corporation for Public Broadcasting. The gentleman from California (MR. VAN DEERLIN) raised such questions during a colloquy when the bill was debated last March. This language makes it clear that the definition of 'agency' for purposes of Freedom of Information Act matters does not include the Corporation for Public Broadcasting.

120 Cong.Rec. 34,164 (1974).[6]

The Conference Committee did not mention Amtrak specifically, nor had it been the object of debate. However, in rethinking the wisdom of subjecting the Corporation for Public Broadcasting to potential political inquiry, the Conference Committee apparently reconsidered the concept of "government control" which had underlain the House Subcommittee's assumption that the new definition would encompass both

Amtrak and the Corporation for Public Broadcasting. The conferees determined that the Corporation for Public Broadcasting was in fact not under government control within the meaning of the definition. Because the House Report originally had recognized that the Corporation for Public Broadcasting and Amtrak were similarly situated in terms of government control, the redetermination with respect to the Corporation for Public Broadcasting, coupled with the omission of the reference to Amtrak originally contained in the House Report, tends to suggest at least a Congressional hesitancy to designate Amtrak a federal agency. This conclusion is strengthened by Congress's failure to modify 45 U.S.C. § 541, which provides that Amtrak will not be a federal agency or establishment.

In sum, the legislative history is inconclusive. Certainly in the early stages Congress intended to include Amtrak within the definition of "agency" contained in 5 U.S.C. § 552(e). However, at the end of the legislative process, the ultimate Congressional intent is simply unclear. About all that can be said with assurance is that the legislative history offers no basis upon which to infer a modification or nullification of 45 U.S.C. § 541.

**B.**

We turn next to the factual question of whether Amtrak is a "Government controlled corporation," within the meaning of 5 U.S.C. § 552(e). This discussion assumes *arguendo* that 5 U.S.C. § 552(e) employs "agency" as a term of art and that it would not be inconsistent to deny "agency" status under 45 U.S.C. § 541 while simultaneously recognizing "agency" status, defined in terms of "Government controlled corporation," under 5 U.S.C. § 552(e).

Like the Corporation for Public Broadcasting, Amtrak is chartered under the Dis-

---

**6.** Representative Moorhead did indicate, however, that he had received assurances from the Corporation for Public Broadcasting that it "would follow the open government principles of the Freedom of Information Act in its infor- mation activities—even though they were not specifically covered by that act—so as to serve the public interest." 120 Cong.Rec. 34,164 (1974).

trict of Columbia Business Corporation Act, not under federal law. *See* 45 U.S.C. § 541. Three members of Amtrak's nine-member board are appointed by the President, with the advice and consent of the Senate. *See* 45 U.S.C. § 543(a)(1)(C). The Secretary of Transportation is an ex officio member, *see* 45 U.S.C. § 543(a)(1)(A), and as the current holder of Amtrak's preferred stock, also designates the two board members annually selected by the preferred stockholders. 45 U.S.C. § 543(a)(1)(E). Private commuter authorities select two members. 45 U.S.C. § 543(a)(1)(D). The remaining board member, the president of Amtrak, who serves as chairman of the board, is appointed by the board. 45 U.S.C. § 543(d). Hence the federal government is represented on the board directly by six members who can control the appointment of a seventh member, the president of the Corporation.

All ten members of the board of directors for the Corporation for Public Broadcasting, on the other hand, are presidentially appointed. Nevertheless, the Conference Committee indicated that for purposes of 5 U.S.C. § 552(e), this federal representation on the board was not contemplated to constitute government control. Presumptively, neither would federal representation on Amtrak's board constitute federal control under § 552(e). *Cf. Blanchette v. Connecticut General Insurance Corp.*, 419 U.S. at 152, 95 S.Ct. at 363 ("Conrail is not a federal instrumentality by reason of the federal representation on its board of directors").

Amtrak's day-to-day operations are not subject to close government supervision. The officers and employees who conduct Amtrak's day-to-day affairs are not federal employees.

Amtrak has no rulemaking authority, other than the ability to prescribe rules for implementing the Freedom of Information Act.

Amtrak is defined as a "mixed ownership Government corporation," 31 U.S.C. § 9101(2)(A), and is thereby subject to federal audit and reporting requirements. This definition of "Government corporation," however, is expressly confined to Chapter 91, Subtitle VI, Title 31. There is no statutory nexus between this definition and the definition that pertains and is expressly confined to Title 5. *See* 5 U.S.C. § 103. We do not think that Amtrak's financial accountability to the federal government constitutes government control over Amtrak within the meaning of Title V. Rather, this accountability is necessary for Congress to monitor the accomplishment of its announced goal, *inter alia*, that Amtrak make "the most cost-effective use of employees, facilities, and real estate," and "minimize Federal subsidies." 45 U.S.C. § 501a(14). Although Title 31 does give the federal government a degree of financial control over Amtrak, we do not find that control sufficient in and of itself to negate Amtrak's character as a private, nonfederally-chartered corporation. *Cf. Blanchette v. Connecticut General Insurance Corp.*, 419 U.S. at 152, 95 S.Ct. at 363 (federal oversight of Conrail to protect federal financial interest did not render Conrail a governmental enterprise rather than a private one).

In light of the totality of these considerations,[7] we hold that Amtrak is not a "Government controlled corporation" as a matter of fact within the meaning of 5 U.S.C. § 552(e). *Accord Held v. National Railroad Passenger Corporation*, 101 F.R.D. 420 at 423 (D.D.C.1984) (memorandum).

Therefore, we affirm the district court's grant of summary judgment for Amtrak on the applicability of the Privacy Act.

## II. *Disputed Fees for Records Production*

■ Ehm instituted an action under the Freedom of Information Act, alleging that

---

**7.** Other courts have applied similar criteria in determining federal agency status. *See, e.g., Irwin Memorial Blood Bank v. American National Red Cross,* 640 F.2d 1051 (9th Cir.1981) (Red Cross is not a federal agency for purposes of the Freedom of Information Act); *Rocap v. Indiek,* 539 F.2d 174 (D.C.Cir.1976) (Federal Home Loan Mortgage Corporation is a federal agency for purposes of the Freedom of Information Act).

Amtrak had failed to respond to or improperly denied his requests for numerous specific records. By affidavit, Ehm stated that his problems began when he asked Amtrak officers to allow him to inspect Amtrak employment bulletins that he had seen displayed on a clipboard hanging on the wall behind the ticket counter at the San Antonio Amtrak office. When his request was denied, he submitted a Freedom of Information Act request to inspect these bulletins. James Stiner, Jr., Vice President of Corporate Communications at Amtrak, responded by asking for more specific information about the documents Ehm wished to inspect. Stiner's letter concluded, "Upon receipt of this information, the documents will be made available for inspection and copying." Ehm supplied the information. Shortly thereafter, Ehm received in the mail from Amtrak a large package containing hundreds of photocopies of Amtrak bulletins. Accompanying the photocopies was an invoice in the amount of $37.30 for fees assessed by Amtrak for record searches and photocopying. Ehm had not been informed beforehand of any charges that would attach to his request. Ehm states that he returned the materials within twenty-four hours of receiving them and refused to pay the fees.

Subsequent to this time, Ehm made numerous other Freedom of Information Act requests to inspect Amtrak records. Mr. Stiner sent Ehm a letter stating that Amtrak did not intend to respond to any of Ehm's past or future Freedom of Information Act requests until Ehm remitted $37.30 to Amtrak. Ehm has refused to do so.

Amtrak has not disputed any of these factual allegations. At the pre-trial conference, Amtrak's counsel conceded that "perhaps there was a misunderstanding" whether Ehm had in fact ever requested Amtrak to make photocopies for him or whether he had asked, as Stiner's correspondence seems to recognize, only to inspect the requested materials. Amtrak's counsel stated, "I think probably Mr. Ehm and I, if we had a chance to talk about it for a little while, we could probably

straighten out ... what I agree is a kind of petty issue of $37.00."

The trial judge responded, "I will cancel the $37.00 that they billed you [Ehm]. I will order them to produce what they have earlier refused to produce and for your not paying it. Will that satisfy you fellows?" Ehm responded, "Yes." The transcript shows no response of Amtrak's counsel. Thereafter, summary judgment was entered in accordance with the findings of fact and conclusions of law announced into the record, all further relief requested but not granted being denied.

On appeal Amtrak argues that the district court erred in ruling that Amtrak could not make its response to Freedom of Information Act requests contingent upon payment for materials provided in response to previous requests. The undisputed facts indicate that the charges arose from a "misunderstanding" on Amtrak's part. The trial court did not rule that Amtrak could not enforce its rights to collect fees properly assessed, but that the fees at issue should be cancelled as improperly assessed. Amtrak made no objection to this ruling at conference. Amtrak's argument on appeal over this concededly "petty issue" is disingenuous.

Amtrak also argues that the district court erred to the extent that its judgment resolved issues other than Amtrak's duty to respond to Ehm's Freedom of Information Act requests. By its terms, the judgment resolved no issues other than Amtrak's duty to respond to Ehm's Freedom of Information Act requests. Any other relief that Ehm might have sought was specifically denied, and Ehm has not appealed that judgment. Amtrak's argument is without merit. Accordingly, we affirm the grant of summary judgment for Ehm on this issue. In accordance with 5 U.S.C. § 552(a)(4)(E), we assess against the United States litigation costs that Ehm has reasonably incurred in this discrete Freedom of Information Act action.

### III. Dismissal on the Pleadings

Ehm also instituted an action under the Freedom of Information Act alleging that

Amtrak had violated its statutory duty by failing to publish in the Federal Register certain information and materials in its possession, as required under 5 U.S.C. § 552(a)(1), and by failing to make information in its possession available for public inspection and copying as required under 5 U.S.C. § 552(a)(2). Ehm sought declaratory and injunctive relief.

Amtrak moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and under Fed.R. Civ.P. 12(b)(6) for failure to state a claim. The district court granted the motion, without specifying whether dismissal was under 12(b)(1) or 12(b)(6).

■ A dismissal under both rule 12(b)(1) and 12(b)(6) has a "fatal inconsistency" and cannot stand. *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir.1971).

> Federal jurisdiction is not so ambidextrous as to permit a district court to dismiss a suit for want of jurisdiction with one hand and to decide the merits with the other. A federal district court concluding lack of jurisdiction should apply its brakes, cease and desist the proceedings, and shun advisory opinions. To do otherwise would be in defiance of its jurisdictional fealty.

*Id.*

Assuming *arguendo* that the dismissal was granted only under 12(b)(1) or 12(b)(6), but not both, we hold that dismissal was inappropriate in this case under either.

■ Ehm invoked the jurisdiction of the federal district court pursuant to 5 U.S.C. § 552(a)(4)(B) which provides, in relevant part, that the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." Amtrak argues that the district court lacks jurisdiction in this case because Ehm was not seeking the production of any agency records. This argument is patently frivolous. Even assuming *arguendo* that Ehm's complaint does not seek the production of documents,

he has nevertheless sought to enjoin Amtrak from withholding its records and thus has crossed the jurisdictional threshold.

Amtrak cites *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980), as standing for the proposition that Amtrak's alleged failure to meet its statutory duty to publish materials in the Federal Register and to make records available for public inspection does not constitute "withholding" of agency records. *Kissinger* held that agency "withholding" does not occur if the agency declines to "retrieve documents which have escaped its possession, [and] which it has not endeavored to recover." 445 U.S. at 152, 100 S.Ct. at 969. The Court declined to define the "full contours of a prohibited 'withholding'." *Id.* at 150, 100 S.Ct. at 968. It seems clear beyond peradventure that an agency's failure to "make available to the public information," as statutorily mandated under 5 U.S.C. § 552(a), constitutes a "withholding" of that information however the contours be defined.

■ Amtrak next argues that Ehm has failed to state a claim upon which relief can be granted, because he is effectively asking that Amtrak create records, which Amtrak has no obligation to do under the Freedom of Information Act. *See Kissinger*, 445 U.S. at 152, 100 S.Ct. at 969.

We construe Amtrak's argument to be that it is already complying with its statutory obligation in regard to existing records that Ehm seeks. The categories of information covered by sections (a)(1) and (a)(2) of 5 U.S.C. § 552 are limited and specific, but we cannot know with sufficient clarity to permit a dismissal on the pleadings whether Amtrak is complying with its statutory obligation in this regard. Ehm's suit for declaratory and injunctive relief will have to be developed past the point of pleadings to determine whether Amtrak is in fact in compliance with the disclosure provisions of 5 U.S.C. § 552(a). Accordingly, dismissal on the pleadings for failure to state a claim was improper.

1258

The order dismissing the action is vacated and the cause remanded for further proceedings consistent with this opinion. We intimate no view on the ultimate merits of the action.[8]

*Summary*

We AFFIRM the district court's grant of summary judgment for Amtrak on the ground that Amtrak is not subject to the Privacy Act. We AFFIRM the grant of summary judgment for Ehm requiring Amtrak to respond to Ehm's Freedom of Information requests to produce documents, and award Ehm reasonable litigation costs under 5 U.S.C. § 552(a)(4)(E). We REVERSE and REMAND the dismissal on the pleadings of Ehm's suit arising under section 552(a) of 5 U.S.C., the Freedom of Information Act.

---

**8.** Shortly before publication of this opinion, Ehm notified the court that Amtrak had released to him these three items which were among those he had sought in this cause of action: (1) Amtrak's 1982 Annual Report; (2) a sworn affidavit of Amtrak's chief financial officer; (3) eighteen pages from a memorandum filed by Amtrak in *Sentner v. Amtrak,* 540 F.Supp. 557 (D.N.J.1982).