Rex T. MORRISON, Harold Highley, et al., Plaintiffs-Appellants,

v.

ALLSTATE INDEMNITY COMPANY, Nationwide Mutual Fire Insurance Company, et al., Defendants-Appellees.

No. 99-14141.

United States Court of Appeals,

Eleventh Circuit.

Sept. 26, 2000.

Appeal from the United States District Court for the Middle District of Florida. (No. 98-00377-CIV-j-20C), Harvey E. Schlesinger, Judge.

Before CARNES, HILL and KRAVITCH, Circuit Judges.

CARNES, Circuit Judge:

This putative diversity class action suit arises out of a dispute over insurance coverage for the diminished value of a vehicle after it sustains physical damage and is repaired. The district court dismissed the suit, concluding that the plaintiffs failed to state a claim upon which relief can be granted, and the plaintiffs appealed. However, we do not reach the merits of the plaintiffs' arguments on appeal because it appears that the district court lacked subject matter jurisdiction over this lawsuit. For the following reasons, we remand the case to the district court to allow the plaintiffs an opportunity to prove that jurisdiction is present.

## I. BACKGROUND

The named plaintiffs in this case brought this suit against nine insurance companies in the United States District Court for the Middle District of Florida.[1] In their Second amended complaint, the plaintiffs

---

[1] Each of the named plaintiffs (six couples and three individuals) owned vehicles insured during the relevant times by one of the nine defendants. Listed below are the named plaintiffs and their respective insurers:

| Plaintiff | Defendant |
| --- | --- |
| Rex T. Morrison | Allstate Indemnity Company |
| Harold and Gael Highley | Nationwide Mutual Fire Insurance Company |
| Pamela M. Wilcox | State Farm Mutual Automobile Insurance Company |
| Robert and Edith Brown | Hartford Insurance Company of the Midwest |
| Berlie and Flora Caudill | Integon General Insurance Corporation |

sought to invoke the district court's diversity jurisdiction pursuant to U.S.C. § 1332(a), alleging that the matter in controversy exceeded $75,000 and that diversity of citizenship existed between the plaintiffs, who are all citizens of Florida, and the nine non-Florida insurers. The plaintiffs brought suit on behalf of themselves and all other persons or entities similarly situated.

Each plaintiff owned a vehicle insured by one of the defendants. The insurance policies provide coverage for physical damage to the vehicle, subject to specified limitations of liability. For example, the policy for Allstate Indemnity Company involved in this case provides that "Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto ... from a collision with another object or by upset of that auto...." This coverage for loss is limited by the following policy language: "Allstate's limit of liability is the actual cash value of the property or damaged part of the property at the time of loss.... However, our liability will not exceed what it would cost to repair or replace the property or part with other of like kind and quality." In other words, the policies limit the defendants' liability to the lesser of (1) the cash value of the vehicle, or (2) the cost to repair the vehicle.[2]

The dispute in this case centers on whether, under Florida law, this policy language requires the defendants to compensate the plaintiffs for the diminished value of their vehicle after its has been repaired—the difference between the pre-accident market value of the vehicle and its market value after it has been repaired. The plaintiffs say it does, the defendants say it does not. The dispute matters because there is a difference in value between pre-wrecked value and fully repaired post-wreck value. For whatever reason (probably skepticism about the efficacy of automobile repairs) people generally will pay more for a used vehicle that has never been wrecked than they will for what is otherwise the same vehicle that has been wrecked and fully repaired. The difference is what the plaintiffs refer to as the "diminished value" of a repaired vehicle.

The plaintiffs filed this class action, alleging that the defendants have failed to pay them for the

---

James E. Williams     GEICO General Insurance Company

William and Gael Moten     Atlanta Casualty Company

Samuel and Frances Perry     Allstate Insurance Company

Bradley and Kendra Emerson     State Farm Fire and Casualty Company.

[2]Each of the nine plaintiffs has a different insurance policy provided by one of the nine defendants, none of which materially differ with respect to the coverage for loss to the vehicle and the limitation of liability clauses at issue in this case.

diminished value of their wrecked but repaired vehicles as they contend is required by the policy language and Florida law. They further allege that the defendants "knowingly, intentionally, and wrongfully charged and received premiums for full coverage ... with no intent to provide Diminished Value Coverage and have established a practice of not paying diminished value loss." The plaintiffs seek to certify the following class and subclass:

> (a) a "Policyholder Class" consisting of all persons residing in the State of Florida, who during the Class Period ... have or had purchased motor vehicle insurance policies from one or more of the Defendants providing "first party" motor vehicle physical damage coverage ... but whom Defendants have deprived and are depriving of the benefit of "Diminished Value" coverage (i.e., coverage for the risk of diminution in value to their vehicles in the event their vehicles are physically damaged and later fully repaired, but still have a lower market value after repairs have been completed due to the seriousness of the physical damage); and (b) a "Damaged Vehicle Subclass" consisting of all persons residing in the State of Florida who have not been paid Diminished Value compensation by respective Defendants as their "first party" insurer after their insured vehicle has actually been damaged and suffered Diminished Value and has been repaired.[3]

According to the plaintiffs' allegations, the size of the policyholder class exceeds one million, but they do not allege a specific number of members in the Damaged Vehicle Subclass. Each of the named plaintiffs is a member of the subclass.

On behalf of the entire Policyholder Class, the plaintiffs assert three claims: (1) breach of contract, (2) unjust enrichment, and (3) injunctive relief. Although styled as separate claims, both the breach of contract and unjust enrichment claims are based on the theory that the class members have paid premiums for diminished value coverage which the defendants have not provided, and have no intention of providing, and thus, the defendants have been unjustly enriched by the amount of the premiums attributable to diminished value coverage. In both claims, the plaintiffs allege that they "suffered damages including the actuarial value of the Diminished Value Coverage."

In the claim for injunctive relief, the plaintiffs request that the defendants be permanently enjoined from: (1) depriving their insureds of diminished value coverage required by the insurance policies, (2) failing to disclose to insureds, whose vehicles have been damaged and repaired, the defendants' obligation to pay for diminished value, and (3) failing to pay for diminished value loss on vehicles actually damaged. The plaintiffs also request that the defendants be required to provide written notice to class members, and future

---

[3]The plaintiffs further defined the "Damaged Vehicle Subclass" as "consist[ing] of all Policyholder Class Members that have or had a vehicle damaged during the applicable coverage period, and where: (a) the vehicle was repaired at a cost of $3,000 or more, or has incurred damages of 20% or more of the vehicle's fair market pre-accident value; (b) the vehicle was no more than five years old at the time of the incident causing the damage; (c) the policyholder has not been paid or received Diminished Value compensation from their respective Defendant insurer."

insureds, disclosing to them that diminished value coverage is provided by their insurance policies.

In addition to the three claims asserted on behalf of the entire class, the plaintiffs also assert a claim for breach of contract on behalf of the Damaged Vehicle Subclass. Under this claim, the plaintiffs maintain the defendants breached the terms of the policies by failing to pay compensation for the diminished value incurred by the policyholders who have filed claims. They seek damages for the uncompensated diminished value to their vehicles and attorney's fees and costs pursuant to Fla. Stat. § 627.428.

The defendants filed separate motions to dismiss. The district court granted the defendants' motions to dismiss, holding that the plaintiffs failed to state a claim upon which relief can be granted. The court reasoned that Florida law did not automatically impose diminished value coverage absent a specific agreement, and therefore, the plaintiffs' complaint did not sufficiently allege a breach of contract. The plaintiffs appealed.

On appeal, we raised the issue of whether the putative class action involved a sufficient amount in controversy to sustain federal diversity jurisdiction under 28 U.S.C. § 1332. At our request, the parties submitted supplemental briefs on that issue. Having reviewed the supplemental briefs and the record in this case, as well as having discussed the issue extensively at oral argument, we conclude that the jurisdictional issue is dispositive of the case—at least for the time being—and accordingly, we do not address the merits of the plaintiffs' contention that the district court erred in dismissing the complaint for failure to state a claim.

## II. DISCUSSION

Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases. *See University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999). While Article III of the Constitution sets the outer boundaries of that power, it also vests Congress with the discretion to determine whether, and to what extent, that power may be exercised by lower federal courts. *See Palmore v. United States,* 411 U.S. 389, 400-01, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973). Consequently, lower federal courts are empowered to hear only cases for which there has been a congressional grant of jurisdiction, and once a court determines that there has been no grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction. *See University of South Alabama,* 168 F.3d at 409-10.

In the present case, the plaintiffs contend that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. Under § 1332, a district court has jurisdiction over any civil case

if (1) the parties are "citizens of different States" and (2) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332. It is the latter requirement—an amount in controversy exceeding $75,000—that poses the jurisdictional hurdle in this case. This is true even though the defendants do not dispute that this case involves the requisite amount in controversy for diversity jurisdiction.[4]

Subject matter jurisdiction is conferred and defined by statute. It cannot be created by the consent of the parties, *see Fitzgerald v. Seaboard Sys. R.R., Inc.,* 760 F.2d 1249, 1251 (11th Cir.1985) (per curiam), nor supplanted by considerations of convenience and efficiency, *see, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 929 (2d Cir.1998) (raising *sua sponte,* after sixteen years of federal court litigation, the issue of whether diversity jurisdiction existed). Thus, a federal court must inquire *sua sponte* into the issue whenever it appears that jurisdiction may be lacking. *See Fitzgerald,* 760 F.2d at 1251 ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). It is not unusual, at least at the appellate stage of a proceeding, for a federal court to reject the joint jurisdictional blandishments of the parties. *See Swint v. Chambers County Com'n,* 514 U.S. 35, 44-46, 115 S.Ct. 1203, 1209, 131 L.Ed.2d 60 (1995). The responsibility for keeping federal courts within their jurisdictional boundaries ultimately lies with those courts.

When jurisdiction is premised on the diversity of the parties, the court is obligated to assure itself that the case involves the requisite amount in controversy. *See, e.g., Laughlin v. Kmart Corp.,* 50 F.3d 871, 873-74 (10th Cir.1995) (dismissing case *sua sponte* based on an insufficient amount in controversy); *see also Meritcare, Inc. v. St. Paul Mercury, Ins.,* 166 F.3d 214, 218 (3d Cir.1999) ("[I]f it develops that the requisite amount in controversy was never present, even if that fact is not established until the case is on appeal, the judgment of the District Court cannot stand.").

In their complaint, the plaintiffs allege simply that "[t]he matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." (Pls.' Second Amend. Compl. at ¶ 1). The complaint does not request a specific amount of damages nor does it otherwise explain the basis for this jurisdictional

---

[4]After the plaintiffs filed their first amended complaint, Hartford filed a motion to dismiss as to it, contending that the Browns, the named plaintiffs insured by Hartford, had not alleged a sufficient amount in controversy. However, after the plaintiffs filed their second amended complaint, it appears that neither Hartford nor the other defendants disputed the amount in controversy allegation. Now all of the parties seem contented to be in federal instead of state court.

allegation. Responding to our inquiry on appeal, the parties argue that diversity jurisdiction exists because: (1) at least one of the class members has a claim for more than $75,000, which would establish diversity jurisdiction over that claim, and then the court would have supplemental jurisdiction over the claims of the entire class pursuant to 28 U.S.C. § 1367,[5] or (2), if no individual claim is valued at more than $75,000, the class claims should be valued in the aggregate—the total value of the class claims should be attributed to each class member for purposes of measuring the amount in controversy.

Because the requisite amount in controversy undoubtedly is present if the class members' claims may be viewed in the aggregate, we address this argument first.

## A. AGGREGATION OF CLAIMS

Generally, if no single plaintiff's claim satisfies the requisite amount in controversy, there can be no diversity jurisdiction. However, there are situations in which multiple plaintiffs have a unified, indivisible interest in some common fund that is the object of litigation, permitting them to add together, or "aggregate," their individual stakes to reach the amount in controversy threshold. As explained by the Supreme Court in *Zahn v. International Paper Co.*:

> When two or more plaintiffs, having *separate and distinct* demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a *common and undivided interest,* it is enough if their interests collectively equal the jurisdictional amount.

*Zahn,* 414 U.S. at 295, 94 S.Ct. at 508 (quoting *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.,* 222 U.S. 39, 40-41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)) (emphasis added).

Despite pervasive criticism of the "separate and distinct" versus "common and undivided" distinction as arcane and confusing, there appears to be a common thread in the relevant case law—the presence of a "common and undivided interest" is rather uncommon, existing only when the defendant owes an obligation

---

[5]In *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court held that each member of a putative class must satisfy the requisite amount in controversy to avoid being dismissed from a class action. In 1990, Congress amended 28 U.S.C. § 1367 to extend the supplemental jurisdiction of federal courts "to include claims that involve the joinder or intervention of additional parties." *See* 28 U.S.C. § 1367(a). The issue of whether the 1990 amendments extend supplemental jurisdiction to the claims of an entire class once the claim of at least one class member satisfies the requisite amount in controversy, thereby overruling *Zahn,* has resulted in an even circuit split. *Compare Stromberg Metal Works v. Press Mechanical, Inc.,* 77 F.3d 928, 930-33 (7th Cir.1996) (holding § 1367 overruled *Zahn* ); *In re Abbott Laboratories,* 51 F.3d 524, 527-29 (5th Cir.1995) (same), *aff'd by an equally divided court sub. nom Free v. Abbott Laboratories,* --- U.S. ----, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000) (*see infra* note 19), *with Meritcare, Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 218-22 (3d Cir.1999) (holding § 1367 did not overrule *Zahn* ); *Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 638-41 (10th Cir.1998) (same).

to the group of plaintiffs as a group and not to the individuals severally. *See Eagle v. American Tel. and Tel. Co.,* 769 F.2d 541, 546 (9th Cir.1985) ("[T]he character of the interest asserted depends on the source of plaintiffs' claims. If the claims are derived from rights that they hold in group status, then the claims are common and undivided. If not, the claims are separate and distinct."); *National Org. for Women v. Mutual of Omaha Ins. Co.,* 612 F.Supp. 100, 107 (D.D.C.1985) ("[T]he cases that allow aggregation often speak of the presence of some fund to which a plaintiff class is seeking access [, and] ... they often involve an attempt to enforce a right that belongs to a group.").

Our predecessor court elucidated this point further in *Eagle Star Ins. Co. v. Maltes,* 313 F.2d 778 (5th Cir.1963),[6] stating: "[T]he Supreme Court has evinced a desire to give a strict construction to allegations of the jurisdictional amount in controversy, so as to allow aggregation only in those situations where there is not only a common fund from which the plaintiffs seek relief, but where the plaintiffs also have a joint interest in that fund, such that if plaintiffs' rights are not affected by the rights of co-plaintiffs, then there can be no aggregation.... In other words, the obligation to the plaintiffs must be a joint one." *Id.* at 781; *see also Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1424 (2d Cir.1997) ("Plaintiffs in paradigm 'common fund' cases assert claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising under a single title or right.").

In addition, the unequivocal mandate from the Supreme Court is that the modern class action procedure does not alter the well-settled limitation on aggregating the claims of multiple plaintiffs. *See Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In *Snyder v. Harris,* the named plaintiff's damages claim was less than the $10,000 then required for diversity jurisdiction, but the claims of the entire class approached $1.2 million. *See id.* at 333, 89 S.Ct. at 1055. However, because the class members' damages claims were separate and distinct, the Court held that the claims could not be aggregated and affirmed the dismissal of the case for lack of subject matter jurisdiction. *Id.* at 335-39, 89 S.Ct. at 1056-58 ("The doctrine that separate and distinct claims could not be aggregated was never, and is not now, based upon the categories of old Rule 23 or of any rule of procedure. That doctrine is based rather upon this Court's interpretation of the statutory phrase 'matter in controversy.' "). Consequently, the claims of putative class

---

[6]Decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent on this Court. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

members may only be aggregated to satisfy the amount in controversy requirement if the class members are suing to "enforce a single title or right, in which they have a common and undivided interest." *Zahn,* 414 U.S. at 295, 94 S.Ct. at 508; *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056.[7]

Against this backdrop of the law of aggregation, we now consider whether the various claims for relief in this class action may be aggregated to satisfy the jurisdictional amount in controversy in this case.

### 1. *Compensatory Damages*

While most class members in this case appear to have relatively small compensatory damages claims, *see infra* Part II.B.1, it is clear that if aggregated, those claims exceed $75,000. But it is also clear that the damages sought in this case may not be aggregated.

As evident from the Supreme Court's decision in *Snyder,* class members generally may not aggregate their individual claims for compensatory damages to establish the requisite amount of controversy. *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056. More specifically, when multiple plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated. *See Alvarez v. Pan American Life Ins. Co.,* 375 F.2d 992, 993-994 (5thCir.1967); *Troup v. McCart,* 238 F.2d 289, 295-96 (5th Cir.1957). Because each member of the Policyholder Class, as well as each member of the Damaged Vehicle Subclass, seeks damages resulting from the defendants' alleged breach of individual insurance policies, the compensatory damages in this case may not be aggregated to establish diversity jurisdiction.

The fact that the breach of contract claim asserted on behalf of the Policyholder Class is alternatively characterized as one for unjust enrichment does not change the result of the aggregation analysis. In Count

---

[7]Although no class has been certified yet, we treat the suit as a class action for present purposes. *See* 3B J. Moore, *Moore's Federal Practice,* ¶ 23.50 (2d ed. 1985) ("In the interim between the commencement of the suit as a class action and the court's determination as to whether it may be so maintained it should be treated as a class suit.")

In this case, there are essentially nine "mini-classes" within the Policyholder Class and Damaged Vehicle Subclass, *i.e.,* classes of insureds who own policies with one of the nine defendant insurers with each "mini-class" being represented by one of the named plaintiffs. *See supra* note 1. Claims against multiple defendants can only be aggregated when the defendants are jointly liable to the plaintiff. *See Jewell v. Grain Dealers Mut. Ins. Co.,* 290 F.2d 11, 13 (5th Cir.1961). The various defendants here are not jointly liable to the class members, and therefore, if aggregation of the class members' claims is permissible, only the claims within each "mini-class" may be aggregated against the corresponding defendant. In other words, aggregation of all of the class members' claims would be insufficient to establish jurisdiction in this case. Instead, each "mini-class" must separately establish the requisite jurisdictional amount between its members and the particular defendant.

II of their complaint, the plaintiffs seek to compel the defendants to disgorge the amount of the collected premiums allegedly attributable to the diminished value coverage the defendants refuse to provide, thereby creating a common fund of recovery on behalf of the class.

For amount in controversy purposes, however, it is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated. *See Gilman,* 104 F.3d at 1427 (explaining cogently the difference between a common fund permitting aggregation and the common fund that is usually generated in any class action); *Snow v. Ford Motor Co.,* 561 F.2d 787, 790 (9th Cir.1977). The members of the Policyholder Class are asserting rights arising from their individual insurance policies, and if successful, they will recover the amount of excessive premiums each paid under his own policy. The fact that this recovery may be obtained under an equitable theory of unjust enrichment does not convert separate and distinct claims for damages into a fund in which the class members have a common and undivided interest. *See, e.g., Alvarez,* 375 F.2d at 993; *Crawford v. American Bankers Ins. Co. of Florida,* 987 F.Supp. 1408, 1412 (M.D.Ala.1997); *Pierson v. Source Perrier, S.A.,* 848 F.Supp. 1186, 1188-89 (E.D.Pa.1994) (refusing to aggregate disgorgement of profits under unjust enrichment claim because "claims cannot be aggregated simply because [plaintiffs] frame their prayer for damages as equitable, rather than legal, relief").

2. *Punitive Damages*

In their complaint, the plaintiffs did not request punitive damages because, at the time the complaint was filed, Florida Statute § 768.72 prohibited a plaintiff from pleading punitive damages without first obtaining leave of court and proffering evidence to support that pleading. *See Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1294-95 (11th Cir.1999) ("*Cohen I*"). In *Cohen I,* which was decided only a few weeks before the district court dismissed the present lawsuit, this Court held that § 768.72 was inapplicable to federal court proceedings because it was preempted by Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See Cohen I,* 184 F.3d at 1295-99. In their supplemental brief, the plaintiffs contend that they will amend their complaint, if the case is remanded, to include a prayer for punitive damages, thereby further increasing the amount in controversy.

However, *Cohen* is a double-edged sword for the plaintiffs. On petition for rehearing, the *Cohen* Court held that prior binding precedent prohibited the aggregation of a class claim for punitive damages. *See Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1076-77 (11th Cir.2000) ("*Cohen II*"). Instead of being

aggregated, the Court explained, the amount of punitive damages must be divided equally among all of the class members to determine the proper amount in controversy for each member. *See id.* In the present case, the complaint alleges that the size of the Policyholder Class "exceeds one million" and maintains that the size of the Damaged Vehicle Subclass is also "large."

As a result, even if the plaintiffs were able to amend their complaint and plead a substantial sum of punitive damages on remand, the *pro rata* amount of those damages for such a large class and subclass would have little effect on establishing the requisite amount in controversy. For example, with the Policyholder Class exceeding one million members, a "good faith" punitive damages claim of one hundred million dollars would amount to less than a $100 for each member of the class. Even a one billion dollar punitive damages claim, which could hardly be asserted in good faith, would amount to less than $10,000 for each class member.

Because neither the claims for compensatory damages or the potential claim for punitive damages may be aggregated in this case, we now consider the possible aggregation of the class claim for attorney's fees.

### 3. *Attorney's Fees*

On behalf of the Damaged Vehicle Subclass, the plaintiffs request, if they are successful, attorney's fees pursuant to Florida Statute § 627.428, which provides:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
>
> * * *
>
> (3) When so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy. *See Cohen II,* 204 F.3d at 1079 (citing *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202, 54 S.Ct. 133, 134, 78 L.Ed. 267 (1933)). However, on the question of whether a claim for statutory attorney's fees may be aggregated in a class action, two recent decisions by this Court indicate the answer is "no." *See id.* at 1079-83; *Darden v. Ford Consumer Fin. Co.,* 200 F.3d 753, 757-59 (11th Cir.2000); *cf. Davis v. Carl Cannon Chevrolet-Olds, Inc.,* 182 F.3d 792, 796-97 (11th Cir.1999)

(disallowing aggregation of class claim for non-statutory attorney's fees).

In *Cohen II,* we read *Darden*—the first case in our Circuit to address the issue—to preclude aggregation of a statutory award of attorney's fees when at least two factors were present: "(1) the class members have a 'separate and distinct' right to recover attorney['s] fees under the relevant statute; and (2) state law provides that the ... fees serve to compensate the class members for their injuries." *Cohen II,* 204 F.3d at 1081-82. Contending neither *Darden* factor is present with respect to § 627.428, the parties argue that aggregation of attorney's fees is permissible in this case.

Addressing the second *Darden* factor, the parties stress that unlike the statutes in *Cohen II* and *Darden,* section 627.428 does not serve to compensate the plaintiff but instead serves to punish insurers for wrongfully denying claims. In support, they cite cases from this Court and from the Florida District Courts of Appeal noting the punitive and deterrent purposes of the statute. *See, e.g., Meeks v. State Farm Mut. Auto. Ins. Co.,* 460 F.2d 776, 780 (5th Cir.1972); *Government Employees Ins. Co. v. Battaglia,* 503 So.2d 358, 360 (Fla.Dist.Ct.App.1987) ("The purpose of section 627.428 is to penalize a carrier for wrongfully causing its insured to resort to litigation to resolve a conflict when it was reasonably within the carrier's power to do so."). The plaintiffs maintain that, because the award of attorney's fees under the statute is intended to deter the wrongful denials of policy claims and to punish insurers for such denials, the award benefits the public and class members as a whole, and thereby grants the class members a "common and undivided" interest in the fees. *Cf. Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1358 (11th Cir.1996) (reasoning that plaintiffs have a common and undivided interest in Alabama punitive damages because the "punitive damages are awarded for the public benefit—the collective good"), *abrogated by Cohen II,* 204 F.3d at 1073-77.

But the Florida Supreme Court has noted, "Florida courts have consistently held that the purpose of section 627.428 and its predecessor is to discourage the contesting of valid claims against insurance companies *and to reimburse successful insureds* for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Insurance Co. of North America v. Lexow,* 602 So.2d 528, 531 (Fla.1992) (emphasis added); *see Wilder v. Wright,* 278 So.2d 1, 3 (Fla.1973) (noting that one of the purposes of § 627.428 is "to reimburse successful insureds reasonably for their outlays for attorney's fees...."). Because the Florida Supreme Court has said that, it is Florida law. *See Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen,* 116 F.3d 1406, 1413 (11th Cir.1997) ("The final arbiter of state law is the state supreme court, which is another way of saying that [a state's] law is what the [state's] Supreme Court says it is."). As a result, we

must take it as given that one of the principal objectives of § 627.428 is to compensate the insured for the expenses of litigating a dispute over the terms of an insurance policy. *See Lexow,* 602 So.2d at 531; *Wilder,* 278 So.2d at 3.

So, while the attorney's fees awarded under § 627.428 serve punitive and deterrent purposes, they also "serve a significant compensatory purpose." *Cohen II,* 204 F.3d at 1082. And as explained by the *Darden* Court, aggregation of such attorney's fees would be inconsistent with *Snyder* 's general prohibition against the aggregation of compensatory damages. *See Darden,* 200 F.3d at 758.

Moreover, even if the sole purpose of § 627.428 were punitive in nature, meaning that the second factor in *Darden* was not present, aggregation would not necessarily be permissible. We think it apparent from *Snyder,* as well as from the Supreme Court cases applying the aggregation standard, that the first factor in *Darden*—whether the plaintiffs have separate and distinct rights to recover the attorney's fees—remains the paramount issue with respect to the aggregation of attorney's fees, as it is with respect to the aggregation of any claim.

Applying the well-settled aggregation standard to statutory awards of attorney's fees, the *Darden* Court reasoned that the rights of class members to recover attorney's fees are separate and distinct whenever each class member is individually entitled to recover attorney's fees under the relevant statute. *See Darden,* 200 F.3d at 758. As is clear from the discussion in *Cohen II,* a necessary corollary to the reasoning in *Darden* is that each class member has a separate and distinct right to statutory attorney's fees, thus precluding aggregation, whenever each class member could recover attorney's fees if he sued individually. *See Cohen II,* 204 F.3d at 1082. The fact that the class members pursue their substantive claims through the procedural mechanism of a class action does not transform their separate and distinct rights to attorney's fees into a single right in which each member has a common and undivided interest. *See Cohen II,* 204 F.3d at 1079-83; *Darden,* 200 F.3d at 757-59; *see also Snyder,* 394 U.S. at 338, 89 S.Ct. at 1058 (explaining that the 1966 amendments to Rule 23 did not expand the ability to aggregate claims to establish diversity jurisdiction).

Under the standards set forth in *Cohen II* and *Darden,* the individual members of the Damaged Vehicle Subclass (the only ones claiming a right to statutory attorney's fees) assert a right to recover attorney's fees under § 627.428 that is separate and distinct, and thus, the second *Darden* factor precluding aggregation is present. According to the plain language of § 627.428, whenever "*any* named or omnibus insured" prevails in a policy dispute, the statute awards attorney's fees "against the insurer and *in favor of the insured* ...." Fla.

Stat. § 627.428(1) (emphasis added). Because any member of the Damaged Vehicle Subclass could individually sue to enforce the terms of the policy, and if successful, would recover attorney's fees under § 627.428, the subclass members have separate and distinct statutory rights to recover attorney's fees.

Attempting to distinguish § 627.428 from the statutes involved in *Cohen II* and *Darden,* the parties argue that the subclass members have no separate and distinct rights to the fees provided by § 627.428, because the statute is intended to compensate the attorney instead of the prevailing party. According to the parties, it is the attorney who is entitled to the § 627.428 fees and, because the class attorney represents the class as a whole, they maintain that the attorney's fees should be viewed in the aggregate. This conclusion was reached by the district court in *Howard v. Globe Life Ins. Co.,* 973 F.Supp. 1412 (N.D.Fla.1996), a case decided before both *Cohen II* and *Darden.* In *Howard,* the court allowed the aggregation of a class claim for attorney's fees under § 627.428, reasoning that "[i]f the putative class prevails in this case, the class's attorney will be entitled to an award of attorney's fees under this statute; it will not be paid to the plaintiffs." *Id.* at 1420.

Although it is true that the benefit of § 627.428 ultimately flows to the attorney who is compensated for his services, that was also true with the statutes at issue in *Cohen II* and *Darden.* That fact does not address the question posed by the aggregation standard as it is reflected in the second *Darden* factor—whether the class members have separate and distinct rights to recover attorney's fees under the relevant statute. *See Cohen II,* 204 F.3d at 1081-82 (citing *Darden,* 200 F.3d at 758). Contrary to the parties' characterization of the statute, we read § 627.428 to have the same function and effect as the attorney's fees statutes at issue in *Cohen II* and *Darden.*

First, as discussed above, one of the primary purposes of the § 627.428 is to compensate the *insured* for his litigation expenses, *see, e.g., Lexow,* 602 So.2d at 531, something also true of the statutes at issue in *Cohen II* and *Darden.* Second, this statute awards the attorney's fees to the insured, not his attorney. As the statutory language unambiguously states, the fee award is adjudged "in favor of the insured," Fla. Stat. § 627.428(1), and it is made part of the judgment entered in favor of the insured. *See id.* § 627.428(3); *see also Danis Industries Corp. v. Ground Improvement Techniques, Inc.,* 645 So.2d 420, 421 (Fla.1994) ("Under [Fla. Stat. § 627.428], an insured or beneficiary who prevails is entitled to attorney['s] fees."); *State Farm Fire & Cas. Co. v. Palma,* 629 So.2d, 830, 832-33 (Fla.1993) (holding that § 627.428 requires the insurer to pay for fees incurred by the insured's attorney in litigating the "*insured* 's entitlement to attorney's fees"

because "such services are rendered in procuring full payment of the judgment ....") (emphasis modified).[8]

Thus, even though the attorney for the insured benefits from an award of fees under § 627.428 in the same way that an attorney benefits from every award of attorney's fees, section 627.428 entitles the insured and not the attorney to the recovery of those fees.

Accordingly, as in *Darden* and *Cohen II,* the basis for the class claim for attorney's fees in this case is the individual right of each class member to recover attorney's fees. Also as in *Cohen II* and *Darden,* each class member in this case could recover the statutory attorney's fees if that member brought a separate lawsuit to enforce the terms of the policy. Therefore, the rights of the class members to recover attorney's fees under Fla. Stat. § 627.428 are separate and distinct, and the amount of attorney's fees may not be aggregated to establish the requisite amount in controversy. *See Cohen II,* 204 F.3d at 1081-82; *Darden,* 200 F.3d at 758. Instead, the attorney's fees must be attributed *pro rata* among each member of the Damaged Vehicle Subclass, *see Cohen II,* 204 F.3d at 1082-82, and given the plaintiffs' allegations regarding the size of the subclass, the portion attributed to each member would be minimal.

### 4. *Injunctive Relief*

For amount in controversy purposes, the value of injunctive or declaratory relief is the "value of the object of the litigation" measured from the plaintiff's perspective. *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.,* 120 F.3d 216, 218-20 (11th Cir.1997) (citations omitted). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Cohen II,* 204 F.3d at 1077 (citing *Ericsson,* 120 F.3d at 218-20).

In this case, the requested injunction essentially requires the defendants to compensate the class members for diminished value on any future damaged vehicle claims and to inform the class members of their entitlement to this compensation. If this injunction were issued, the benefit obtained by the members of the Policyholder Class would be the payment of any future claims for diminished value, at least for as long as the policies at issue remain in effect, and thus, the value of the injunction would be the present value of those

---

[8]Moreover, in *Palma,* the Florida Supreme Court explained that "[§ 627.428] applies in virtually all suits arising under insurance contracts ... [and, thus,] the terms of [the statute] are an implicit part of every insurance policy issue in Florida." *Palma,* 629 So.2d at 832. Thus, the insured's right to attorney's fees essentially is derived from his individual insurance policy, further indicating that the right is separate and distinct from that of other policyholders. *See Alvarez,* 375 F.2d at 993-94 (explaining that claims against an insurer based on the individual policies of insureds are separate and distinct).

future payments.[9] But before we address whether this value may be viewed in the aggregate, we first explain why the value of the injunctive relief with respect to an individual class member is too speculative to satisfy the amount in controversy requirement.

Although a diversity suit should not be dismissed unless "it is apparent, to a legal certainty, that the plaintiff cannot recover [the requisite amount in controversy]," *see St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), this liberal standard for jurisdictional pleading is not a license for conjecture. In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction, or as the Supreme Court has put it, to "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Snyder,* 394 U.S. at 340, 89 S.Ct. at 1059 (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)). We think this obligation requires a court to insure that the benefits resulting from an injunction are not counted where they are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds $75,000. Accordingly, a plaintiff who bases diversity jurisdiction on the value of injunctive relief must show that the benefit to be obtained from the injunction is "sufficiently measurable and certain to satisfy the ... amount in controversy requirement...." *Ericsson,* 120 F.3d at 221.[10]

In this case, it is mere speculation as to whether any particular class member will benefit monetarily, and if so to what extent, from an injunction requiring the defendants to pay any future claims for diminished value. *See Cohen II,* 204 F.3d at 1078-79 (explaining that "the injunctive relief in this case involves too many

---

[9]Although the requested injunction would require the defendants to notify their policyholders of the obligation to pay for diminished value, the plaintiffs benefit from this notice only to the extent that the defendants are required to pay for future diminished value claims. Therefore, the real value of the injunction to the plaintiffs is the potential future payments of diminished value claims. Moreover, while the defendants would certainly incur costs in providing this notice, the value of an injunction for amount in controversy purposes must be measured by what the plaintiff stands to gain, and therefore, the costs borne by the defendant in complying with the injunction are irrelevant. *See Cohen II,* 204 F.3d at 1079 n. 8.

[10]In *Ericsson,* this Court held that the value of an injunction was "too speculative and immeasurable" to establish the requisite amount in controversy. *Ericsson,* 120 F.3d at 221-22. The only remedy available to Ericsson was an injunction invalidating Motorola's contract to provide a communications system to the City of Birmingham, and thus, the benefit of this injunction to Ericsson was simply the chance to rebid on the contract. *See id.* at 221. Because all the injunction could do was void Motorola's contract, Ericsson would benefit monetarily from the injunction only if (1) the City elected to rebid the contract, which it apparently was not required to do, and (2) after the contract was rebid, the City selected Ericsson's communications system. *See id.* Based on these contingencies, the *Ericsson* Court concluded that the value of the injunctive relief was not "sufficiently measurable and certain to satisfy the ... amount in controversy requirement of the diversity statute." *Id.*

contingencies" to satisfy the amount in controversy requirement). One significant uncertainty in valuing the injunctive benefit is that the requested injunction would not prevent the defendants from changing the language of their policies to exclude explicitly any obligation to pay diminished value, thereby preventing any future payments once the current policies were no longer in effect. *See id.* at 1077 (reasoning that amount in controversy could not be founded upon a requested injunction where the defendant could comply in a manner that resulted in no monetary benefit to the class members).[11]

Even if the defendants did not alter the policy language, the injunction has no reasonably certain monetary value to any individual class member because it is simply impossible to know which class members will be involved in automobile accidents and assert claims for diminished value. *Cf. Burns v. Massachusetts Mut. Life Ins. Co.,* 820 F.2d 246, 249 (8th Cir.1987) (affirming dismissal for failure to establish requisite amount in controversy based, in part, on the fact that plaintiff's claimed future losses to be avoided by injunctive relief, namely lesser amounts of dividends, were "highly speculative" as the defendant was not contractually obligated to pay dividends at all). Equally uncertain is the amount of those potential diminished value claims. An accident may be so minor as to result in virtually no diminished value or so severe that the vehicle is totaled and the insured is paid the full pre-accident market value.[12]

We therefore conclude that, with respect to individual class members, the value of injunctive relief here is "too speculative and immeasurable" to be included in determining the amount in controversy. *Ericsson,* 120 F.3d at 221-22; *cf. Vicksburg, S. & P. Ry. Co.v. Nattin,* 58 F.2d 979, 980 (5th Cir.1932) ("Jurisdiction is based on actuality, not prophecy, the pressure of a grievance immediately felt and presently measurable in money of the jurisdictional amount. Speculative anticipation that conditions, from which

---

[11]At oral argument, counsel for the insurers pointed out that in order to effect that change in the policy language the insurers would have to secure the approval of the appropriate state agency. But there is nothing to indicate that approval would be withheld.

[12]A similar rationale is found in decisions involving suits to enjoin the collection of taxes. In those cases, courts have consistently held that the amount in controversy is measured by the amount of taxes owed at the time of litigation, not the present value of future tax obligations. *See, e.g., Healy,* 292 U.S. at 270-71, 54 S.Ct at 703-04. "The reasons given for this rule of measurement are that it cannot be assumed that the defendant will continue to enforce the tax, or that the plaintiff will continue to be subject to the tax, or that the taxing statute will remain in effect and not be modified by legislation." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3708, at 251 (3d ed.1998) (citing *Healy* ); *see also M & M Transp. Co. v. City of New York,* 186 F.2d 157, 158 (2d Cir.1950) (Hand, J.); *Vicksburg, S. & P. Ry. Co.v. Nattin,* 58 F.2d 979, 980 (5th Cir.1932) ("To assume, as appellant asks the court to do, that there will be an assessment each year against the property sufficient to aggregate in the twenty-five years the bonds have to run more than $3,000 is to indulge in speculation and prophecy. Many things, all problematical, may occur to make the assessment for the next year and for future years wholly different.").

present ills, not now sufficient in amount to give jurisdiction, flow, may in time aggregate the necessary amount, will not support jurisdiction.").[13]

Although we conclude that, as to any individual class member, the value of the injunctive relief is too speculative to satisfy the amount in controversy requirement, we agree with the parties that, if it may be viewed in the aggregate, the value of the injunctive relief satisfies the requisite amount in controversy. The plaintiffs have alleged the Policyholder Class consists of over one million members. What is only merely possible with respect to one policyholder—a sum of future claims for diminished value with a present value

---

[13]The decision in *Opelika Nursing Home, Inc. v. Richardson,* 448 F.2d 658 (5th Cir.1971), does not suggest a different result. In that case the plaintiff filed a putative class seeking to enjoin the enforcement of federal regulations that potentially limited the amount of payments the class could obtain on behalf of Medicaid patients. *See id.* at 660-62. At the time, federal question cases also were subject to an amount in controversy requirement, and because the plaintiffs admitted in their complaint that they might suffer no pecuniary loss as a result of the enforcement of the regulation, the district court concluded that the benefit of the injunction was too speculative to establish the requisite amount in controversy and dismissed the case for lack of jurisdiction. *See id.* at 662.

> On appeal, the Fifth Circuit reversed, stating:

>> "The speculativeness of the jurisdictional claim in this case does not warrant dismissal, for the fact the plaintiffs admitted that they may or may not suffer losses as a result of the enforcement of the ... regulation does not show to a legal certainty that plaintiffs' claim is really for less than the jurisdictional amount. While such an admission may have evidential value as tending to show an absence of good faith on the part of the plaintiffs, it is by no means conclusive, for the very fact that plaintiffs stated that they may suffer losses negates the existence of any 'legal certainty.' "

> *Id.* at 663. The *Richardson* Court did not suggest that speculative benefits will sustain diversity jurisdiction but instead concluded that "the pleadings alone [were] not so conclusive that the plaintiffs should have been denied an opportunity to present facts in support of their jurisdictional claim." *Id.* at 662. In the words of the *Ericsson* Court, the plaintiffs in *Richardson* may have been able to prove that their losses from enforcement of the injunction were "sufficiently measurable and certain to satisfy the ... amount in controversy requirement...." *Ericsson,* 120 F.3d at 221. However, on the basis of the contingencies noted in the text, we conclude that the plaintiffs in this case could not.

> There is a more basic distinction between this case and the *Richardson* case—it involved federal question jurisdiction. As several courts have noted, when there was still an amount in controversy requirement for federal question cases, courts often were more indulgent of speculative claims so that the courts could address the merits of significant federal law issues. *See, e.g., National Org. for Women v. Mutual of Omaha Ins. Co.,* 612 F.Supp. 100, 107 (D.D.C.1985). Clearly, such indulgence is not warranted when only state law issues are presented. *Cf. Snyder,* 394 U.S. at 341, 89 S.Ct. at 1059 ("Suits involving issues of state law and brought on the basis of diversity can often be most appropriately tried in state courts."). That is the basis on which *Richardson* can be squared with *Snyder* 's direction that where jurisdiction is founded upon diversity of citizenship, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Id.,* 394 U.S. at 340, 89 S.Ct. at 1059 (quoting *Healy,* 292 U.S. at 270, 54 S.Ct. at 703).

of $75,000—becomes quite probable with respect to over a million policyholders. With that many policies alleged to be in effect, we clearly cannot conclude to a legal certainty that the value of the injunction sought in this case, if viewed in the aggregate, is too uncertain to satisfy the amount in controversy requirement

However, as we have explained previously, aggregation is determined by the right asserted, not the relief requested. *See Gilman,* 104 F.3d at 1427. Accordingly, when an injunction protects rights that are separate and distinct among the plaintiffs, the value of the injunction to the individual plaintiffs may not be aggregated to sustain diversity jurisdiction. *See Alfonso v. Hillsborough County Aviation Auth.,* 308 F.2d 724 (5th Cir.1962);[14]  *see also Burns,* 820 F.2d at 250-51;  *Snow v. Ford Motor Co.,* 561 F.2d 787, 790-91 (9th Cir.1977);  *Lonnquist v. J.C. Penney Co.,* 421 F.2d 597, 599 (10th Cir.1970).

This rule against aggregating the value of an injunction where it protects rights that are separate and distinct among the plaintiffs clearly applies to the claims of insureds who sue to enforce the separate and distinct rights arising from their respective insurance policies with an insurer. *See Alvarez v. Pan American Life Ins. Co.,* 375 F.2d 992, 993 (5th Cir.1967);  *see also Burns,* 820 F.2d at 250-51. And thus, for purposes of aggregation, it is irrelevant that multiple insureds choose to remedy the alleged violation of their separate and distinct rights through a joint request for injunctive or declaratory relief. *See Alvarez,* 375 F.2d at 993 ("[The insured] sought an accounting, and an injunction requiring that [the insurer] re-establish his interest and that of the class on its books, and that all claims be honored. This too was nothing more than a claim on behalf of each contract holder in the class for whatever might be due under the respective contracts."); *Burns,* 820 F.2d at 250-51.

In this case, the rights asserted arise from the class members individual insurance policies with one of the defendants, and the requested injunction seeks to protect against future violations of those individual

---

[14]In *Alfonso,* a group of homeowners alleged that the expansion of an airport constituted an unconstitutional taking of their property and sought to enjoin the airport's use of the new approach way until condemnation proceedings could be initiated. *See Alfonso,* 308 F.2d at 725. The homeowners alleged that some of the homes had been damaged by more than $4,000 each, while others alleged unspecified amounts of damages. *See id.*

After noting that "[u]nless the claims of the [homeowners] can be aggregated, it is apparent that the minimum jurisdictional requirement [$10,000 at the time] is not satisfied," *id.* at 726, and also that separate distinct claims may not be aggregated, the Court affirmed the district court's dismissal for lack of subject matter jurisdiction. *See id.* at 726-28. Even though the homeowners sought only declaratory and injunctive relief, *see id.* at 725, the *Alfonso* Court applied the well-settled standard for aggregation to their claims. *See* 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3704, at 134 & n. 11 (3d ed.1998) (citing *Alfonso* as a "[r]epresentative case ... illustrating the separate-and-distinct claim rule....").

rights. Thus, the claims for injunctive relief are separate and distinct, and they may not be aggregated to establish the requisite amount in controversy. Concluding that none of the claims in this class action may be viewed in the aggregate, we now consider whether any individual class member has asserted a claim satisfying the requisite amount in controversy.

B. SUFFICIENCY OF AMOUNT IN CONTROVERSY FOR INDIVIDUAL CLASS MEMBER'S CLAIMS

If there is an individual class member whose claim for compensatory damages, combined with a *pro rata* share of attorney's fees and the potential claim for punitive damages, exceeds $75,000, then diversity jurisdiction exists over that individual's claim against his respective insurer.[15] If there are such class members, we must then decide whether 28 U.S.C. § 1367 statutorily overruled the Supreme Court's decision in *Zahn* to extend a federal court's supplemental jurisdiction over the claims of the entire class when at least one class member has a claim which satisfied the jurisdictional amount in controversy requirement. *See supra* note 5.

1. *Compensatory Damages*

On behalf of the Damaged Vehicle Subclass, the plaintiffs seek compensation for the diminished value of their damaged vehicles. While the named plaintiffs do not allege the specific amounts of uncompensated diminished value, the sparse record evidence concerning those amounts indicates that they do not approach the $75,000 threshold for diversity jurisdiction.

From our review of the record, there is information concerning the pre-accident value and costs of repairs for only two of the named plaintiffs, the Motens and the Highleys. In their response to Atlanta Casualty's Motion for Summary Judgment, the Motens indicated that the pre-accident market value of their vehicle was $6,450. Obviously, if the pre-accident value was $6,450, the amount of diminished value after Atlanta Casualty paid for repairs falls far short of $75,000. The amount of the diminished value claim of the Highleys similarly appears to be well below $75,000. In its Motion to Dismiss, Nationwide indicated that the cost of repair to the Highleys' vehicle was $2,105.92. Under the definition of the Damaged Vehicle Subclass, *see supra* note 3, the Highleys would be members only if the repair costs of their vehicle were at least 20% of the pre-accident value of their car. It follows that the pre-accident value of their car could not have been more than $10,500, and as a result, it is evident the Highleys' damages claim for diminished value

---

[15]Because there are nine "mini-classes" in this case, *see supra* note 7, there must be at least one individual within each "mini-class" that has a claim sufficient to satisfy the requisite amount in controversy.

would also be far below the $75,000 threshold.[16]

Although we recognize that a court owes some deference to a diversity plaintiff's amount in controversy allegations, and should dismiss the suit for lack of jurisdiction only when "it is apparent, to a legal certainty, that the plaintiff cannot recover [the requisite amount in controversy]," *see St. Paul Mercury Indem.,* 303 U.S. at 289, 58 S.Ct. at 590, that deference does not eviscerate the court's obligation to scrupulously enforce its jurisdictional limitations. "While a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury." *Diefenthal v. Civil Aeronautics Bd.,* 681 F.2d 1039, 1052 (5th Cir.1982); *see also Opelika Nursing Home,* 448 F.2d at 664-65.[17] Moreover, legal certainty is "a very strict objective standard," *Jones v. Landry,* 387 F.2d 102, 104 (5th Cir.1967), and "once it is clear that as a matter of law the claim is for less than [$75,000], the [court] is required to dismiss." *Burns v. Anderson,* 502 F.2d 970, 972 (5th Cir.1974). On the record before us, we conclude to a legal certainty that the named plaintiffs' individual claims for compensatory damages claims could not satisfy the $75,000 amount in controversy requirement.

Notably, in their supplemental briefs addressing the jurisdictional issue, none of the parties suggest that any of the named plaintiffs' claims for compensatory damages would even approach the $75,000 threshold. Instead, in addition to relying on the claims for attorney's fees and injunctive relief, the plaintiffs look to the claims of other, unidentified class members. They assert that: "Within the class are members who have either (1) a very expensive luxury vehicle (Rolls Royce, etc.), which by the nature of the car has suffered significant diminished value or (2) had multiple cars that have suffered diminished value during the class period. Therefore, there are class members that have suffered significant compensatory damage nearing, if

---

[16]A survey of reported cases with claims for the diminished value of vehicles reveals that the typical claim involves only a few thousand dollars. *See, e.g., Boyd Motors, Inc. v. Employers Ins. Co. of Wausau* (D.Kan.1990) (diminished value claim for fourteen cars totaling $40, 609.48 for an average of about $2,900 per car); *Johnson v. State Farm Mut. Auto. Ins. Co.,* 157 Ariz. 1, 754 P.2d 330, 331 (Ariz.Ct.App.1988) (diminished value claim of $3,000); *Hartford Fire Ins. Co. v. Rowland,* 181 Ga.App. 213, 351 S.E.2d 650, 652 (Ga.Ct.App.1986) (diminished value claim of $2,500); *Delledonne v. State Farm Mut. Auto. Ins. Co.,* 621 A.2d 350, 351 (Del.Super.Ct.1992) (diminished value claim of $8,000).

[17]Not only is a conclusory allegation that the amount in controversy requirement is satisfied insufficient to sustain jurisdiction once that allegation is challenged, *see St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1254 (5th Cir.1998), we think that, if anything, such an allegation is entitled to even less consideration in the context of a class action. This is so because the named plaintiff's unstated basis for his jurisdictional allegation might be the erroneous position that the claims of the class members may be aggregated.

not exceeding the $75,000 jurisdictional amount." (Pls.' Supp. Br. at 10).

However, if there are such class members, their existence must be demonstrated not supposed. Jurisdiction cannot be established by a hypothetical. *See Diefenthal,* 681 F.2d at 1052 ("Jurisdiction is not conferred by the stroke of a lawyer's pen. When challenged, it must be adequately founded in fact."); *see also Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942) (noting that when the plaintiff's jurisdictional allegations are challenged, he "bears the burden of supporting the allegations by competent proof"). "It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation." *St. Paul Mercury Indem.,* 303 U.S. at 287 n. 10, 58 S.Ct. at 590 n. 10 (citations omitted); *see also McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (explaining that a court may require "that the jurisdictional facts be established ... and for that purpose [it] may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence").

However, "a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir.1991); *see also Majd-Pour v. Georgiana Community Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir.1984) ("Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction."). In this case, the issue of a sufficient amount in controversy was not raised until appeal, which limited the plaintiffs' opportunity to show whether there are other class members who may make a "good faith" allegation that they have incurred close to $75,000 in damages.

Consequently, the plaintiffs are entitled to an opportunity to make that showing on remand .[18] If they make that showing on remand, then the issue of whether 28 U.S.C. § 1367 overruled the *Zahn* decision, *see supra* note 5, will be presented for decision. However, because remand might be rendered unnecessary if,

---

[18]Also, the compensatory damages claim for the Policyholder Class may not fare any better for jurisdictional purposes. The plaintiffs contend that the defendants have damaged the class members, including depriving them of the "actuarial value"of the diminished value coverage. Again, the theory appears to be that the policyholders paid premiums which had been calculated on the assumption that the defendants would compensate for diminished value and, because the defendants intend not to provide such compensation, the policyholders have overpaid for their policies and seek compensation for that overpayment. Assuming that these "overpayments" are recoverable, it seems highly unlikely that the amount of an individual class member's overpayments would approach $75,000. Nevertheless, the plaintiffs will have an opportunity to prove on remand that, in addition to the purported members of the Damaged Vehicle Subclass, there are members of the Policyholder Class who are entitled to recover such a substantial amount of compensatory damages.

as the parties contend, the potential attorney's fees award under Florida Statute § 627.428 may be attributed solely to the named plaintiffs, which would itself present the *Zahn* and § 1367 issue, we briefly address that contention.

### 2. *Attorney's Fees*

The parties argue that if the potential award of attorney's fees under Florida Statute § 627.428 may not be viewed in the aggregate, *see supra* Part II.A.3, then the statutory language suggests that the fees should be attributed only to the named plaintiffs. In support of this argument, the parties point to *In re Abbott Labs., 51 F.3d 524 (5th Cir.1995), aff'd by equally divided court sub nom., Free v. Abbott Laboratories, Inc.,* --- U.S. ----, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000),[19] in which the Fifth Circuit addressed a Louisiana statute authorizing an award of attorney's fees for "the representative parties ... when as a result of the class action a fund is made available, or recovery or compromise is had which is beneficial, to the class." *Id.* at 526 (quoting La.Code Civ. Proc. art. 595).

Concluding that the statutory language indicated that the attorney's fees should be attributed only to the named plaintiffs, and not to every class member, the court in *Abbott* held that the named plaintiffs had established the requisite amount in controversy to support diversity jurisdiction over their claims. *See id.* at 526-27. The court then went on to hold that supplemental jurisdiction existed over the rest of the class members, pursuant to 28 U.S.C. § 1367. *See id.* at 527-29.

In this case, the parties liken § 627.428 to the Louisiana statute involved in *Abbott*. Because § 627.428 awards attorney's fees to "any named or omnibus insured," the parties contend that in a class action the attorney's fees should be attributed to the named plaintiffs. *See Howard,* 973 F.Supp. at 1421. Consequently, the parties conclude, attributing the attorney's fees in this case to the nine named plaintiffs would establish the requisite amount in controversy as to those plaintiffs and—assuming that § 1367 did overrule the *Zahn* decision—supplemental jurisdiction would extend to the claims of the entire class.

We need not reach the supplemental jurisdiction question, however, because we see no basis for attributing the attorney's fees solely to the named plaintiffs. The Louisiana statute in *Abbott* is readily distinguishable from § 627.428. The Louisiana statute explicitly addressed class actions and provided for the award of attorney's fees to "the representative parties." *Abbott,* 51 F.3d at 526 (quoting La.Code Civ. Proc.

---

[19]An affirmance by an equally divided Supreme Court has no precedential value. *See Rutledge v. United States,* 517 U.S. 292, 304, 116 S.Ct. 1241, 1249, 134 L.Ed.2d 419 (1996).

art. 595). In contrast, section 627.428 does not specifically address class actions, and it does not refer explicitly to class representatives.

Nor does § 647.428's language awarding attorney's fees to "any named or omnibus insured" implicitly refer to class representatives. The term "named insured" clearly refers to the "person designated in an insurance policy as the one covered by the policy," *Black's Law Dictionary* 811 (7th ed.1999) (defining "named insured"), not the person who is named as a class action plaintiff. Thus, since every member of the Policyholder Class is a "named insured" under § 627.428, there is no basis for attributing the attorney's fees only to the named plaintiffs. For amount in controversy purposes, the amount of fees must be attributed *pro rata* among all of the class members, resulting in a relatively small sum for each member.

## C. REMAND

On the record before us, the claims in this putative class action do not satisfy the requisite amount in controversy requirement for diversity jurisdiction. Neither the compensatory damages, potential punitive damages, attorney's fees, or the injunctive relief may be aggregated. In addition, it seems evident that none of the named plaintiffs possesses an individual claim that approaches the $75,000 required for diversity jurisdiction.

However, the plaintiffs maintain that there are some class members who have suffered substantial damages from uncompensated diminished value. Because the amount in controversy issue was not raised until appeal, the plaintiffs were not afforded the opportunity to determine whether such class members exist, and if so, to present evidence of that fact to the district court. Thus, we remand the case to grant the plaintiffs an opportunity to prove there are class members who can make a "good faith" allegation that their claims for compensatory damages approach or exceed $75,000.[20]

If the plaintiffs carry their burden of proof with respect to this jurisdictional issue, *see McNutt,* 298 U.S. at 189, 56 S.Ct. at 785 (stating that jurisdictional facts must be established by a preponderance of evidence), then the district court will have diversity jurisdiction over the claims of those class members. It should then address the plaintiffs' argument that 28 U.S.C. § 1367 has overruled *Zahn* to authorize

---

[20]While the district court may consider the class members' *pro rata* share of attorney's fees and, if appropriate, punitive damages, we note again that these sums will be small and the existence of a sufficient amount in controversy will substantially depend on the claim for compensatory damages.

Also, because there is no joint liability between the defendants, the plaintiffs must identify as to each defendant a class member who has a sufficient compensatory damages claim.

supplemental jurisdiction over the class members whose claims do not satisfy the requisite amount in controversy. If the court decides that *Zahn* is still the law, only individuals with claims sufficient to satisfy the amount in controversy requirement may proceed as plaintiffs.[21] If the plaintiffs do not prove that there are class members whose individual claims satisfy the amount in controversy requirement, the district court must dismiss the case for lack of jurisdiction.

One final note is in order. Because jurisdiction cannot be conferred by consent, the district court should be leery of any stipulations the parties offer concerning the facts related to jurisdiction. Given that the parties share the goal of having this case decided in federal court, the district court should be especially mindful of its independent obligation to ensure that jurisdiction exists before federal judicial power is exercised over the merits of the case.[22]

### III. CONCLUSION

The case is remanded to the district court for proceedings not inconsistent with this opinion.

REMANDED.

---

[21]The district court has not yet reached any class certification issues. If the district court decides that *Zahn* is still the law, the number of individuals, if any, with jurisdictionally sufficient claims against a particular insurer may be so small that joinder of their claims under Rule 20 of the Federal Rules of Civil Procedure is practicable, thereby precluding certification of a class action. *See* Fed.R.Civ.P. 23(a)(1) (permitting class action procedure when "the class is so numerous that joinder of all members is impracticable"). We leave that issue, if it arises, to the district court to decide in the first instance.

[22]The plaintiffs suggest that we certify the question of whether Florida law requires compensation for diminished value to the Florida Supreme Court while remanding to the district court to develop a factual record on the issue of jurisdiction. However, doubts regarding subject matter jurisdiction must be resolved before taking any steps to address the merits of a case. *See Packard v.Provident Nat'l Bank,* 994 F.2d 1039, 1049 (3d Cir.1993) ("It is axiomatic that federal courts are courts of limited jurisdiction, and as such are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case."). If jurisdiction does not exist in this case, we have no power to certify the state law question. "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *University of South Alabama,* 168 F.3d at 410.